[Cite as *State v. Aduddell*, 2011-Ohio-582.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-00137 |
| BRIAN C. ADUDDELL | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
Court of Common Pleas, Case No. 2006-
CR-1115

JUDGMENT:      Reversed and Remanded

DATE OF JUDGMENT ENTRY:      February 7, 2011

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

JOHN D. FERRERO, JR.      BARRY T. WAKSER
Stark County Prosecutor      Stark County Public Defender
110 Central Plaza S., Ste. 510      200 Tuscarawas Street, Ste 200
Canton, OH 44702      Canton, OH 44702

*Gwin, P.J.*

{¶1} Defendant-appellant Brian C. Aduddell appeals the April 21, 2010 Judgment Entry of the Stark County Court of Common Pleas denying his motion to be transferred to a less restrictive treatment commitment setting. Plaintiff-appellee is the State of Ohio.

STATEMENT OF THE CASE AND FACTS

{¶2} In July 2006, appellant murdered his grandparents, Charles and Evelyn Evans. He killed Charles by stabbing him multiple times with a knife. Appellant beat Evelyn with a cane, and stabbed her multiple times. As a result, the Stark County Grand Jury indicted appellant on two counts of murder.

{¶3} Appellant was initially found incompetent to stand trial, but was later restored and found competent to stand trial. After a sanity evaluation was ordered, appellant waived his right to a jury and a trial to the bench was held on August 6, 2007. The court found appellant not guilty by reason of insanity. The court ordered appellant committed to Twin Valley Behavioral Healthcare ("Twin Valley") as the least restrictive commitment alternative.

{¶4} Since appellant's commitment, he has seen Doctor Dennis Eshbaugh on three or four occasions for an hour or so on each occasion. Dr. Eshbaugh is a clinical and forensic psychiatrist who performs independent evaluations of Twin Valley patients. The purpose of Dr. Eshbaugh's evaluation is to determine the patient's status as a mentally ill person and to provide an opinion as to the least restrictive treatment setting for the patient.

{¶5} On February 18, 2010, Twin Valley submitted a report to the court recommending appellant be transferred to the locked civil unit at Heartland Behavioral Healthcare. ("Heartland"). A hearing was held April 19, 2010 in which Dr. Eshbaugh testified that in his opinion, Heartland was the least restrictive commitment alternative.

{¶6} Dr. Eshbaugh testified that he has thirty-three years of experience as a clinical psychologist and fifteen years of experience as a forensic psychologist. The parties stipulated to his credentials as an expert in both fields. He testified that he has a contract to conduct independent evaluations for the Ohio Department of Mental Health. The purpose of this evaluation was to determine if appellant was still a mentally ill person subject to court-ordered hospitalization and to render an opinion as to the least restrictive alternative.

{¶7} Dr. Eshbaugh evaluated appellant on January 13, 2009 and February 2, 2010. The 2009 report indicated appellant was still showing signs of mental illness and had limited participation in treatment and activities. Dr. Eshbaugh then believed if appellant was moved to a less restrictive environment, the stress created by the move would likely cause appellant to become "more acutely psychotic," posing a risk to public safety.

{¶8} The 2010 report indicated that the same negative symptoms contained in the 2009 report continued, and further indicated that appellant was still not participating in psychological treatment for serious mental illness nor any therapeutic activities. Rather, he spent the majority of his time sleeping. Nonetheless, Dr. Eshbaugh's recommendation as to the least restrictive setting changed in his 2010 report. In that

report, Dr. Eshbaugh recommended that appellant be transferred, from his current maximum security setting to a locked civil unit at Heartland Behavioral Health.

{¶9} At the conclusion of the hearing, the court expressed its concern regarding appellant's lack of participation in treatment, and therefore questioned his ability to successfully transfer to Heartland, where he would have more interaction with others. On April 21, 2010, the court issued a decision denying the transfer.

{¶10} It is from the trial court's April 21, 2010 Judgment Entry denying appellant's transfer to Heartland Behavioral Healthcare that appellant has timely appealed raising the following assignment of error,

{¶11} "I. THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S TRANSFER FROM TWIN VALLEY BEHAVIORAL HEALTHCARE TO HEARTLAND BEHAVIORAL HEALTHCARE."

I.

{¶12} In his sole assignment of error, appellant argues that the trial court erred when it refused grant his transfer from Twin Valley to Heartland because the state failed to meet its burden of proof pursuant to R.C. 2945.401(G).  We agree.

{¶13} R.C.  2945.401 (D)(1), which governs such a transfer or change in the conditions of a person's commitment, provides:

{¶14} "[W]hen a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code, at any time after evaluating the risks to public safety and the welfare of the defendant or person, the chief clinical officer of the hospital, facility, or program to which the defendant or person is committed may

recommend a termination of the defendant's or person's commitment or a change in the conditions of the defendant's or person's commitment."

{¶15} R.C. 2945.401(G)(2) provides that in order to successfully counter a request for a less restrictive commitment setting, the state must show "by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person."

{¶16} The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." *In re: Estate of Haynes* (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.

{¶17} Dr. Eshbaugh, in his 2009 report recommended maintaining the status quo. Dr. Eshbaugh explained that the reason he was now recommending the transfer was due to the fact that appellant had remained stable over the last year:

{¶18} "So after a year of not participating I think I have to look at what are the long-term implications about the least restrictive alternative. It looks like this is going to be a fairly continuous state where it is going to be hard to involve him in psychological treatments. But because he has been compliant with medication which is of course the primary treatment of his illness, and has not been aggressive with staff or other patients other than going to group activities, he has been very cooperative with staff. We felt

that or at least it was my opinion that he could be transferred to a civil, a locked civil unit and be managed in that environment.

{¶19} "* * *

{¶20} "Well, he has -- again I have to look at it from the perspective of a locked unit on a civil mental health facility.  One would hope there would be very limited access to any kind of alcohol or drugs and so that's why I would look at that as a risk factor that is in fact controlled.

{¶21} "If he was being looked at for conditional release where he would be returned to the community, I would have very definite concerns about that because he is not participating.

{¶22} "[Prosecutor]. The question then is with those risk factors still remaining, that being the alcohol, though I understand the qualification about it being a locked facility, the failure to involve himself in mental health treatment and the dreams continuing, what in your opinion then changes your recommendation as far as the setting of his hospitalization?

{¶23} "[Dr. Eshbaugh]. At this time -- well, a year ago I would have felt that he would benefit from another year in a maximum-security facility in an effort to get him more involved in treatments.  I think over the past year we might -- he might really be telling us that his mental illness has plateaued.  Can we expect him to get significantly better so to speak, the mental illness?  I am not certain at this point in time that it will. So in a sense he is mentally stabilized.

{¶24} "There are some significant concerns with him still and that's why again if I were discussing anything about whether does he have a mental illness, should he be

out in the community, it would be yes, he still has a mental illness, no, I don't think he should be out in the community or in anything less restrictive than a civil setting or a civil unit.

**{¶25}** "Which it's been my experience in a civil unit that the level of his mental illness can be managed in that sort of environment because he is not particularly hostile, aggressive, and generally cooperative face to face with people one-on-one. He will continue with treatment so there's much less risk of him being harmful to others which is a primary concern. And with that reduced risk in my opinion at this time he does not necessarily need to be in a maximum security mental health facility." T. at 16-17.

**{¶26}** Dr. Eshbaugh further testified concerning appellant's lack of aggressive or threatening behavior during his hospitalization,

**{¶27}** "Well, actually in doing a risk assessment we go much further, but during his hospital stay I believe it was since 2007, he has not been aggressive. The symptoms have remitted partially so they are in partial remission. But, yes, one thing we will look at is there suicidal behavior or is there aggressive behavior. And during his hospital stay there has not been.

**{¶28}** "And during a risk assessment we will actually go prior to the instant offenses and take a look at that history, which there was nothing in it that would indicate a personality disorder or any social personality disorder. He doesn't really have a violent history prior to that which significantly reduces the likelihood of any kind of further violence." T. at 18-19.

**{¶29}** Dr. Eshbaugh went on to state that appellant's level of mental illness could be managed in a locked civil unit at Heartland. (T. at 11; 16). This is due to appellant's compliance with medications, cooperation with staff, lack of aggression, and absence of delusions or hallucinations.

**{¶30}** Finally, Dr. Eshbaugh testified that appellant is not simply a malingerer,

**{¶31}** "[Mr. Wakser]: Doctor, the negative symptoms that you have testified about, the lack of participation and activities, lack of social interaction, is that necessarily a volitional act on Brian's part, or is that something which could be more associated with the disease itself or side effects of the medications?

**{¶32}** "[Dr. Eshbaugh]: In my opinion it is most typical that it's involuntary. That it's either a function of the medication they are taking, it could be an indication of some kind of actual mental deterioration or a combination of the both. But particularly in this case I do not believe it's voluntary. It is not like hanging out having a nice time there. It's really involuntary and he has no control over it particularly." T. at 29-30.

**{¶33}** If the state had questioned Dr. Eshbaugh's opinion, it could have sought another expert opinion. R.C. 2945.401(D)(1)(c). It did not do so in the case at bar. The state presented no evidence that appellant's transfer would put the public at risk. The state offered no evidence of Heartland's inability to properly house an insanity acquittee such as appellant. The state clearly failed to meet its burden of proof pursuant to R.C. 2945.401 (G)(2).

**{¶34}** Accordingly, the trial court erred in refusing to grant his transfer from Twin Valley to Heartland.

{¶35} Appellant's sole assignment of error is sustained.  The judgment of the Stark County Court of Common Pleas is reversed, and this matter is remanded for proceedings in accordance with our opinion and the law.

By Gwin, P.J.,

Farmer, J., and

Wise, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JOHN W. WISE

WSG:clw 0119

[Cite as *State v. Aduddell*, 2011-Ohio-582.]

IN THE COURT OF APPEALS FOR STARK COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :
                                        :
                    Plaintiff-Appellee  :
                                        :
                                        :
                                        :
-vs-                                    :          JUDGMENT ENTRY
                                        :
BRIAN C. ADUDDELL                       :
                                        :
                                        :
                    Defendant-Appellant :          CASE NO. 2010-CA-00137


        For the reasons stated in our accompanying Memorandum-Opinion, the
judgment of the Stark County Court of Common Pleas is reversed, and this matter is
remanded for proceedings in accordance with our opinion and the law.   Costs to
appellee.


                                        _____
                                        HON. W. SCOTT GWIN

                                        _____
                                        HON. SHEILA G. FARMER

                                        _____
                                        HON. JOHN W. WISE