**[Cite as *State v. Roden*, 2011-Ohio-2788.]**

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 95507**

## STATE OF OHIO

PLAINTIFF-APPELLANT

vs.

## ANTHONY RODEN

DEFENDANT-APPELLEE

## JUDGMENT:
## AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-013666

**BEFORE:**     Stewart, J., Blackmon, P.J., and Sweeney, J.

**RELEASED AND JOURNALIZED:**   June 9, 2011

**ATTORNEYS FOR APPELLANT**

William D. Mason
Cuyahoga County Prosecutor

BY:   David M. Zimmerman
        Matthew E. Meyer
Assistant County Prosecutors
The Justice Center
1200 Ontario Street, 8th Floor
Cleveland, OH   44113


**ATTORNEYS FOR APPELLEE**

Robert L. Tobik
Cuyahoga County Public Defender

BY:   Erika B. Cunliffe
        Cullen Sweeney
Assistant Public Defenders
310 Lakeside Avenue, Suite 200
Cleveland, OH   44113

MELODY J. STEWART, J.:

{¶ 1}  The state of Ohio appeals from an order extending appellee Anthony Roden's conditional release from confinement in a state mental health facility into a 24-hour, supervised group home.   Roden, who was found

not guilty by reason of insanity of the 1974 shooting of a Cleveland police officer, is a paranoid schizophrenic, but currently in remission under prescribed medication. The state argues that Roden's medical history requires that he be confined in a more restrictive environment — not in a group home that has no protocol for ensuring that its residents take their medication.

I

{¶ 2} When a person is found not guilty by reason of insanity and is determined to be mentally ill and subject to hospitalization, that person must be committed to an appropriate medical or psychiatric facility that constitutes "the least restrictive commitment alternative available that is consistent with public safety and the welfare of the person." See R.C. 2945.40(F).

{¶ 3} The court retains jurisdiction over the commitment until the commitment is finally terminated. See R.C. 2945.401(A). Six months after the initial commitment, and every two years thereafter, the hospital or facility in which the person is committed must report in writing to the court as to whether the person "remains a mentally ill person subject to hospitalization by court order * * *." See R.C. 2945.401(C). Within 30 days of receiving the report, the court must hold a hearing on the continued commitment of the person or on any changes in the conditions of the commitment. Id.

{¶ 4} "The defendant or person may request a change in the conditions of confinement, and the trial court shall conduct a hearing on that request if six months or more have elapsed since the most recent hearing was conducted under this section." Id. In addition, the chief clinical officer of the facility or program to which the person is committed may, after evaluating the risks to the public safety and the welfare of the person, recommend a termination of commitment or a change in the conditions of the commitment. See R.C. 2945.401(D)(1). If there is a recommendation for termination of commitment or a change in the conditions of commitment, the state bears the burden, by clear and convincing evidence, of showing that the person remains mentally ill and that a proposed change in the conditions of the commitment to a less restrictive status, "represents a threat to public safety or a threat to the safety of any person." See R.C. 2945.401(G).

II

{¶ 5} The parties stipulate that Roden has been, and continues to be, a mentally ill person for purposes of the statute.

{¶ 6} In 2003, Roden was confined to Northcoast Behavioral Healthcare, with Levels III and IV day privileges. As described by the court, Level III privileges allowed Roden unsupervised movement on hospital grounds and Level IV privileges allowed Roden to go on supervised, off-campus outings.

{¶ 7} In 2005, over the state's objection that Roden continued to pose a risk to the public safety and welfare, the court ordered that the least restrictive treatment option for Roden would be his placement in a group home with 24-hour supervision with restrictions relating to treatment. This placement allowed for Level V privileges, which included periodic, unsupervised leaves from the hospital on condition of release after successful Level V passes to a group home. We upheld this determination on appeal, finding that the state's arguments amounted to "mere speculation" because none of the witnesses, including its own, recommended that Roden remain at Northcoast Behavioral Healthcare. See *State v. Roden*, 8th Dist. No. 86841, 2006-Ohio-3679, ¶28.

{¶ 8} Despite being granted placement in a group home, Roden was not transferred — his treatment team raised concerns for his personal safety due to reprisals if moved to a proposed home on Cleveland's west side. In the biennial review conducted in 2007, both Roden and the state stipulated to a finding that Roden remained mentally ill and subject to civil confinement. The state noted its continued opposition to Roden's release into a 24-hour supervised group home, but conceded that the court's 2005 ruling was a "settled matter of law" and, calling it "a status quo hearing," offered no expert witnesses. The court ordered Roden to remain in the hospital on conditional

release status with Levels III, IV, and V movement until appropriate housing could be arranged.

{¶ 9}  In 2008, the state asked the court to revoke Roden's conditional release status, offering evidence that it claimed had only recently been made available to it showing that there were "troubling problems with Roden's behavior that would lead a reasonable observer to conclude that Roden poses a much greater risk to the community than previously believed."  It claimed that treatment notes showed that Roden resisted following rules; showed an abnormal obsession with pornography; and demonstrated a reluctance to take his medication.  The court denied the motion as moot, finding that Roden had not been transferred into the group home.

{¶ 10} In 2009, the court gave notice that it would hold a hearing as part of its biennial review of Roden's commitment.  The state again opposed Roden's conditional release.  While conceding that Roden's current psychiatrist considers Roden to be in remission from his mental illness, "past psychiatrists have made similar observations, only to have Roden subsequently attempt to obtain firearms, escape multiple times, develop a delusional fixation on sex and pornography, threaten to kill hospital workers, and remain hospitalized for many more years."  Roden argued that the state was merely rehashing arguments made and rejected in 2005 when the court first granted Roden's conditional release.

{¶ 11} During the hearing, the court heard testimony from several witnesses. As summarized by the court in its written opinion, "[n]one of the witnesses expressed an opinion that Mr. Roden should not be entitled to Level V Conditional Release privileges." The court found that Roden's schizophrenia has been in remission for over ten years with the help of medication and other therapies, and that "[m]edicated he appears to pose no threat to members of organized society." The court thus ordered that the residential treatment option first ordered in 2005 be maintained subject to the "strict condition that [Roden's] medication be monitored daily."

III

{¶ 12} In our earlier opinion in this case, we noted that R.C. 2945.401(G)(2) places the burden on the state to prove by clear and convincing evidence that Roden's current placement poses a threat to the public safety or a threat to the safety of any person. *Roden*, 8th Dist. No. 86841, at ¶8. "Clear and convincing evidence" is more than a mere preponderance of the evidence; it is evidence sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *In re Adoption of Holcomb* (1985), 18 Ohio St.3d 361, 368, 481 N.E.2d 613.

{¶ 13} Every witness expressed the opinion that Roden's conditional release should be continued in the terms previously ordered by the court.

Roden has been in remission from his schizophrenia for at least ten years. Athough he had at one time expressed a desire to stop using his medication in order to overcome certain sexual side-effects, his treating psychiatrist told the court that it was very common for patients to ask questions about their medications. The testimony showed that Roden is fully compliant with his medication, being "among the top group of patients we have." The psychiatrist said that Roden understood that "the only way he'll ever get out of here, a hospital, is if he takes his medicines" and that Roden has "resigned himself to dealing with whatever situation it is, and just taking the medicines." The group home situation arranged for Roden requires a staff member to personally administer any medication, thus ensuring Roden's compliance with the conditions of his release. See *State v. Aduddell*, 5th Dist. No. 2010-CA-00137, 2011-Ohio-582.

{¶ 14} The state claimed that Roden showed some anger after returning from a short visit to the group home, arguing that this was due to Roden's "inability to maintain his medications when outside of a hospital setting." This argument is disingenuous. Testimony showed that while Roden had been on an overnight visit to a group home, he had been given the wrong medication and returned to the hospital showing frustration. Staff members at the group home personally dispensed all of Roden's medication, so Roden was not at fault in any mix-up. In any event, testimony showed that Roden's

frustration with the dynamics of the group home visit was not attributable to Roden's mental illness, but to Roden's personality. The psychiatrist said that Roden "is disgruntled sometimes, doesn't like certain things, and feels entitled to others." That he had difficulty adjusting to a non-hospital setting after being confined for over 30 years was unsurprising to a social worker who supervised Roden in his job training program. She testified that Roden established a perfect record of attendance in job training, was cooperative, and worked well with others. There were no reports of him acting out or failing to abide by the program's rules.

{¶ 15} The state also made the broader point that if Roden's mental condition was so dependent upon him taking his medication, Roden had plainly not recovered to the point where he could be granted conditional release into a group home where he could refuse to take medication. This argument ignores the court's order that stated that Roden had to take his medication as part of his conditional release. In fact, the court stated that it would be grounds to terminate the conditional release if Roden should "cease taking his medication." The evidence moreover showed that Roden knew he would have to take his medication for the rest of his life and accepted that fact. Finally, the supervised group home setting would ensure that Roden take his medication on a daily basis.

**{¶ 16}** Finally, the state offered no evidence to support its concerns about Roden's alleged sexual deviancy issues. Roden's psychiatrist testified that Roden had expressed an interest in being granted access to adult cable television programming (the Playboy Channel) and in hiring a prostitute, but denied that this evidenced some form of sexual deviancy, characterizing it "typical heterosexual kind of desires." The court noted this testimony and found "there was no testimony that Mr. Roden has ever displayed sexually inappropriate behavior throughout his 30-year commitment history." The state offered no expert testimony to contradict the psychiatrist, so there was no basis for the court to disagree with Roden's treating psychiatrist. See *Aduddell* at ¶33.

**{¶ 17}** Having offered no evidence of any kind to call into question the 2005 decision to grant conditional release, it follows that the state failed to carry its burden of showing by clear and convincing evidence that there had been any change warranting a modification or termination of Roden's conditional release.

Affirmed.

It is ordered that appellee recover of appellant his costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas to carry this judgment into execution. A certified copy of

this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MELODY J. STEWART, JUDGE

PATRICIA ANN BLACKMON, P.J., and
JAMES J. SWEENEY, J., CONCUR