[Cite as *State v. Hubbard*, 2014-Ohio-4130.]

# IN THE COURT OF APPEALS

## ELEVENTH APPELLATE DISTRICT

## TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| - vs - | : | **CASE NO. 2013-T-0082** |
| JAMES A. HUBBARD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 91 CR 431.

Judgment: Affirmed.

*Dennis Watkins*, Trumbull County Prosecutor, and *LuWayne Annos*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael A. Partlow,* 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, James A. Hubbard, appeals the Order of the Trumbull County Court of Common Pleas, denying his request to decrease his level of supervision at Heartland Behavioral Healthcare Hospital. The issue before this court is whether the State has met its burden of demonstrating that a patient represents a threat to public safety or a threat to the safety of any person, by demonstrating that the patient is a paranoid schizophrenic whose condition is currently controlled by medication, but

who believes that he is not mentally ill and that his antipsychotic medication is unnecessary. For the following reasons, we affirm the decision of the court below.

{¶2} On September 23, 1991, Hubbard was indicted by the Trumbull County Grand Jury on one count of Aggravated Murder, in violation of R.C. 2903.01(A), and Attempted Murder, in violation of R.C. 2923.02(A).

{¶3} On May 24, 1993, Hubbard was found "not guilty by reason of insanity." Hubbard was committed to the Timothy B. Moritz Center in Columbus, Ohio.

{¶4} On July 14, 1999, Hubbard was transferred to the Massillon Psychiatric Hospital, nka Heartland Behavioral Healthcare. For additional details, see *State v. Hubbard*, 11th Dist. Trumbull No. 97-T-0144, 1999 Ohio App. LEXIS 5248 (Nov. 5, 1999).

{¶5} On April 9, 2013, the Medical Director of Heartland Behavior Healthcare wrote a letter to the Trumbull County Court of Common Pleas, pursuant to R.C. 2945.401, requesting "a change in the conditions of the commitment to a less restrictive status," in particular from a Level III Plan to a Level IV Plan.

{¶6} On April 24, 2013, the Trumbull County Prosecutor filed an Application for Hearing on Change in Conditions.

{¶7} On July 10, 2013, a Level Movement Hearing was held in the trial court. The only witness to testify was Stephen Noffsinger, M.D., an associate director of the forensic psychiatry fellowship at University Hospitals in Cleveland and a consultant for Heartland Behavioral Healthcare. Dr. Noffsinger testified as the court's witness. Dr. Noffsinger testified that he had been involved in evaluating Hubbard since March 2013.

2

{¶8}   According to Dr. Noffsinger, Hubbard is diagnosed with Schizophrenia, Paranoid Type.  Hubbard presently enjoys Level III privileges, which allow him a certain freedom of movement without escort within a secured area of the hospital.  Under Level IV, Hubbard would be allowed off hospital grounds while under constant supervision.  Dr. Noffsinger, in a report dated April 3, 2013, recommended the increase in privileges for the following reasons:

1.    Mr. Hubbard's psychosis is in relative remission.  He has not experienced any psychotic symptoms, such as paranoid delusions or hallucinations, that have substantially impacted his behavior.  While he maintains some mild suspiciousness about others, he has not acted on his suspicions, and he has no plans or intent to harm others based on psychotic motives.

2.    Mr. Hubbard's behavior has been well-controlled and non-violent for a substantial period of time.  That he has not engaged in violent actions in recent months indicates he is at a low risk to engage in future violence in the near future.

3.    Mr. Hubbard has sufficient insight into his illness to comply with his prescribed antipsychotic medication (Invega Sustenna).

4.    Mr. Hubbard's history of treatment non-compliance has been addressed by the prescribing of long-acting antipsychotic medication.

5.    Mr. Hubbard has appropriately handled Level 2 and 3 privileges.

6.    Mr. Hubbard has no thoughts, intentions or plans to harm others.

7. Mr. Hubbard is remorseful about the offense, and vows never to harm others in the future.

8. Continued hospitalization at Heartland Behavioral Healthcare on Level 4 privileges is the least restrictive setting.

{¶9} Dr. Noffsinger noted that all members of Hubbard's treatment team concur in recommending the change to Level IV.

{¶10} On cross-examination, the Prosecutor questioned Dr. Noffsinger about progress notes made by Hubbard's doctors from February 2012 through April 2013.

{¶11} In February 2012, Hubbard agreed to receive medication by monthly injection, whereas he had previously refused. However, a Level IV Report prepared by Heartland Behavioral Healthcare acknowledged that "[c]ompliance related to accepting injectable medication was previously a condition of his court [sic] prior to him being considered for Level IV." In other words, Hubbard's compliance in accepting injectable medication was the result of the court establishing it as a condition for Level IV privileges.

{¶12} Since February 2012, the following note was repeatedly entered in Hubbard's records: "Patient does not appear to have any delusions or hallucinations on the surface. However, because of his offering very little, it is hard to say."

{¶13} Beginning in November 2012, it was repeatedly noted that Hubbard does not believe that he has a mental illness and that his medications do not help. Hubbard also began to confide at this time that "I need to think before answering because I do not want to give the wrong information." Hubbard further reiterated that he does not need to be on medication and that he is skeptical about it.

4

**{¶14}** In January 2013, it was noted that Hubbard "became guarded when * * * asked about his paranoia," and that "he feels his offense had not been related to his mental illness and he continues to be skeptical about treatment." Hubbard was still concerned about saying "anything wrong."

**{¶15}** In April 2013, Hubbard continued to deny that he was mentally ill or that he benefited from the medication and offered that he was not ill at the time he committed the murder, but, rather, that "he felt threatened and overreacted."

**{¶16}** At various times during this period from February 2012 to April 2013, Hubbard refused to sign his consent to his treatment plan. In May 2012, Hubbard explained that he did not agree with his treatment plan because he did not think he was mentally ill.

**{¶17}** Similar progress notes continued to be entered regarding Hubbard through April 2013, when he was examined by Dr. Noffsinger. However, in a conversation with Dr. Noffsinger shortly before the hearing, Hubbard "did affirm he had a mental illness and was in need of treatment."

**{¶18}** Dr. Noffsinger acknowledged that Hubbard's denial of his mental illness was not unusual, as "poor insight is actually a symptom of psychotic illness." Dr. Noffsinger also acknowledged that Hubbard's claim that his crimes were not the result of mental illness would be a concern if Hubbard were being released, but not a concern for Level IV as the patient remains under constant supervision. However, the Level IV Plan prepared by Heartland Behavioral Healthcare states that Level IV is intended for a patient who "[h]as reasonable expectations of being able to return to live in the community in the future." Dr. Noffsinger testified that maintaining a patient in certain

circumstances, when less restrictive circumstances may be more appropriate, could be frustrating to a patient and increase stress levels, which is a risk factor for the reemergence of the mental illness. In Hubbard's case, a reemergence of the mental illness would "definitely [put him] at an increased risk for violence."

{¶19} The trial court questioned Dr. Noffsinger whether Hubbard's belief that the murder he committed was an overreaction was delusional. Dr. Noffsinger opined that this belief was indicative of "poor insight" into his condition, rather than delusion.

{¶20} The trial court also questioned Dr. Noffsinger about the off-ground supervision Hubbard would have with Level IV privileges. Dr. Noffsinger testified that supervision could consist of an employee of Heartland Behavioral Healthcare, not necessarily medical or security personnel, escorting from one to three patients while off the grounds of the hospital.

{¶21} On July 11, 2013, the trial court issued an Order denying the request to grant Hubbard Level IV privileges.

{¶22} On August 8, 2013, Hubbard filed a Notice of Appeal. On appeal, Hubbard raises the following assignments of error:

{¶23} "[1.] The trial court's judgment finding that the state had proved by clear and convincing evidence that the recommended change in conditions of commitment to a less restrictive setting would pose a threat to public safety is against the manifest weight of the evidence."

{¶24} "[2.] The trial court erred and abused its discretion by denying the request to transfer appellant to a less restrictive commitment setting."

**{¶25}** "[W]hen a defendant * * * has been committed [after being found not guilty by reason of insanity], at any time after evaluating the risks to public safety and the welfare of the defendant * * *, the designee of the department of mental health and addiction services or the managing officer of the institution or director of the facility or program to which the defendant * * * is committed may recommend * * * a change in the conditions of the defendant's * * * commitment." R.C. 2945.401(D)(1).

**{¶26}** "In a [level movement] hearing * * *, the prosecutor has the burden of proof as follows: * * * For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person." R.C. 2945.401(G)(2).

**{¶27}** "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. "[J]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court." *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990).

**{¶28}** "At the conclusion of a [level movement] hearing conducted under division (D)(1) of this section * * *, the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly." R.C. 2945.401(I).

7

**{¶29}** Pursuant to R.C. 2945.401(I), "the trial court has discretion to approve, disapprove, or modify any recommendation made concerning a patient's course of treatment." *State v. Hilton*, 10th Dist. Franklin No. 02AP-518, 2003-Ohio-87, ¶ 18. Absent an abuse of that discretion, this court will not disturb the lower court's decision regarding a level movement recommendation. *Id.*

**{¶30}** Hubbard argues that the trial court's finding that the change in his status represented a threat to public safety or the safety of any person was not supported by the evidence. Hubbard maintains that his evasiveness about his paranoia, occasional refusal to sign his treatment plan, and questioning of his diagnosis and treatment do not amount to proof that he is a threat to anyone's safety.

**{¶31}** We disagree. It is well-established that any reemergence of Hubbard's mental illness could be potentially violent and lethal. Heartland Behavioral Health's proposed granting Hubbard Level IV privileges was based on its conclusion that such privileges are "the least restrictive alternative available that is consistent with public safety and the welfare of the person." R.C. 2945.40(F). The reasons for supporting this recommendation were undermined at the hearing. Dr. Noffsinger felt that Hubbard's psychosis was in "relative remission" and that he did not experience psychotic symptoms. Yet there was considerable evidence presented at the hearing that Hubbard concealed his actual mental condition and that his compliance was not an indication of progress but, rather, a desire for greater freedom. To his regular doctors, Hubbard frankly admitted that he did not believe that he had a mental illness, that he needed medication, or that his crime was the result of mental illness. But when Dr. Noffsinger evaluated Hubbard in preparation for testifying at the hearing, Hubbard acknowledged

his illness and need for treatment. Hubbard only consented to receiving injectable medication when the court made it clear that he would have to consent in order for the court to consider granting him greater privileges. Hubbard has been preoccupied with saying the "wrong things" when speaking with his doctors. Hubbard's evasiveness – his "offering very little" – has hindered doctors from stating more affirmatively that he does not have symptoms. Instead, it was reported that Hubbard did "not appear to have any delusions or hallucinations on the surface."

{¶32} Dr. Noffsinger's recommendation cited Hubbard's "sufficient insight into his illness" and "remorse[] about the offense." Yet, Hubbard's statements to his treating doctors reflect neither insight nor remorse, but rather a concern to say the right things to obtain greater privileges.

{¶33} Thus, the State effectively demonstrated that Level IV privileges were not, in fact, the least restrictive setting consistent with public safety. *State v. Evans*, 5th Dist. Richland No. 12CA76, 2013-Ohio-2730, ¶ 51 ("[w]hile there is evidence that appellee is responding well to treatment and his bipolar condition is in remission, we find appellant met its burden and established, by clear and convincing evidence, the proposed transfer represents a threat to public safety or the safety of any person," as "[t]oo many questions remain about the efficacy of appellee's diagnosis and treatment").

{¶34} Assuming, arguendo, that the evidence before the trial court did not rise to the level of clear and convincing evidence, the trial court, as demonstrated by R.C. 2945.401(I), retains discretion to approve, disapprove, or modify a level movement recommendation. Here, the trial court's judgment was based on justifiable concerns regarding Hubbard's threat to public safety if allowed less restrictive conditions. In

9

particular, the court noted "the episodic nature of [Hubbard's] paranoid schizophrenia" and "the fact that the staff who will be there observing [Hubbard] on the Level IV movement is not staff that the Court considers to be security oriented enough to protect citizens if the episodes came back in such a nature to be as violent as the first episode." We find no abuse of the court's discretion in its decision to deny the request to move Hubbard to Level IV in light of these concerns.

{¶35} Hubbard's assignments of error are without merit.

{¶36} For the foregoing reasons, the Order of the Trumbull County Court of Common Pleas, denying the request to decrease Hubbard's level of supervision at Heartland Behavioral Healthcare Hospital, is affirmed. Costs to be taxed against the appellant.


TIMOTHY P. CANNON, P.J., concurs with a Concurring Opinion,

THOMAS R. WRIGHT, J., concurs in judgment only.


_____


TIMOTHY P. CANNON, P.J., concurring.

{¶37} I concur with the opinion of the majority. I write separately to clarify this court's standard of review, due primarily to appellant's suggestion that the relevant statute was amended "in order to clear up confusion concerning the amount of discretion afforded a trial court in these types of proceedings * * *." However, appellant

does not recognize that the amendment to the statute only limited the discretion of the trial court in a manner that is adverse to appellant.

**{¶38}** R.C. 2945.401(E) indicates that, in making *any* determination, "the trial court shall consider all relevant factors, including, but not limited to * * *: (1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others[.]" *See, e.g., State v. Roden*, 8th Dist. Cuyahoga No. 86841, 2006-Ohio-3679, ¶9.

**{¶39}** I believe the legislative intent behind R.C. 2945.401 has always been to give the trial court broad discretion in approving changes in the course of treatment for those persons committed under R.C. 2945.39 or R.C. 2945.40. However, the statute was amended to include a method by which the state can object and thus *prevent* the trial court from releasing an institutionalized individual or from allowing a proposed, less restrictive status. R.C. 2945.401(G)(2). If the state establishes, by clear and convincing evidence, that the requested change is "a threat to public safety or a threat to the safety of any person," the trial court no longer has discretion to approve the proposed, less restrictive status. *Id.*

**{¶40}** Some of the cases reviewing this issue suggest that there must be clear and convincing evidence before the trial court is permitted to disapprove movement to a less restrictive status. *See, e.g., State v. Aduddell*, 5th Dist. Stark No. 2010-CA-00137, 2011-Ohio-582, ¶33-34. However, I do not believe that is how the statute was intended to be applied. The trial court's discretion is *only* limited, pursuant to R.C. 2945.401(G)(2), if the state establishes "by clear and convincing evidence that the proposed change represents a threat." If, however, the state does not meet its burden

11

of proof, it is still within the trial court's discretion to disapprove the proposed, less restrictive status.

{¶41} The majority holds that the state met its burden and proved by clear and convincing evidence that the proposed change was not "the least restrictive setting consistent with public safety." I concur.