[Cite as *State v. Stutler*, 2021-Ohio-481.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JEREMY STUTLER | : | Case No. 2020 CA 00022 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2011CR1169



JUDGMENT:                    Affirmed



DATE OF JUDGMENT:            February 22, 2021



APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

KATHLEEN O. TATARSKY                      MICHAEL A. PARTLOW
110 Central Plaza South                   112 South Water Street
Suite 510                                 Suite C
Canton, OH  44702-1413                    Kent, OH  44240

*Wise, Earle, J.*

{¶ 1}   Defendant-Appellant, Jeremy Stutler, appeals the December 26, 2019 judgment entry of the Court of Common Pleas of Stark County, Ohio, denying him movement to Level IV for community privileges.  Plaintiff-Appellee is the state of Ohio.

### FACTS AND PROCEDURAL HISTORY

{¶ 2}   In 2011, appellant was charged with murder, tampering with evidence, and gross abuse of a corpse, and found not guilty by reason of insanity.  He was committed to Twin Valley Behavioral Healthcare, a maximum security mental health facility.  In January 2014, appellant was transferred to Northcoast Behavioral Healthcare.  He was granted Level III movement to participate in Level III activities and the less restrictive Level IV movement for medical treatment.

{¶ 3}   On February 2, 2015, Joy Stankowski, M.D., the Chief Clinical Officer of Northcoast Behavioral Healthcare, requested that appellant be granted Level IV movement for community trips with staff or case manager supervision.  A second opinion found the request reasonable albeit with numerous conditions.  Following a hearing, the trial court denied the request.  This court affirmed the decision.  *State v. Stutler*, 5th Dist. Stark No. 2015CA00099, 2015-Ohio-5518, *appeal not accepted,* 145 Ohio St.3d 1470, 2016-Ohio-3028 (*Stutler I*).

{¶ 4}   On January 27, 2017, Dr. Stankowski again requested that appellant be moved to Level IV for community privileges.  The request was accompanied by a recommendation from a medical doctor.  Again, a second opinion found the request reasonable contingent upon several conditions.  Following a hearing, the trial court denied the request.  This court affirmed the decision.  *State v. Stutler*, 5th Dist. Stark

No. 2017CA00094, 2018-Ohio-1619, *appeal not accepted,* 153 Ohio St.3d 1467, 2018-Ohio-3450 (*Stutler II*).

{¶ 5}   On September 26, 2019, Dr. Stankowski again requested that appellant be granted movement to Level IV for community privileges.   A hearing was held on December 12, 2019.  By judgment entry filed December 26, 2019, the trial court denied the request.

{¶ 6}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignments of error are as follows:

I

{¶ 1}   "THE TRIAL COURT'S DETERMINATION THAT APPELLANT SHOULD BE DENIED A CHANGE TO LEVEL IV-COMMUNITY PRIVILEGES IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND CONSTITUTES AN ABUSE OF THE TRIAL COURT'S DISCRETION."

II

{¶ 2}   "THE TRIAL COURT HAD NO DISCRETION TO DENY THE LEVEL CHANGE REQUESTED IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE INDICATING THAT THE LEVEL CHANGE SHOULD NOT BE GRANTED."

I, II

{¶ 3}   In his first assignment of error, appellant claims the trial court's decision to deny the level change is not supported by clear and convincing evidence and therefore constitutes an abuse of discretion.  In his second assignment of error, appellant claims the trial court had no discretion to deny the level change in the absence of clear and convincing evidence that it should not be granted.  We disagree with both assignments of error.

{¶ 4}   R.C. 2945.401 states the following in pertinent part:

(A) A defendant found incompetent to stand trial and committed pursuant to section 2945.39 of the Revised Code or a person found not guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section.

(D)(1) Except as otherwise provided in division (D)(2) of this section, when a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code, at any time after evaluating the risks to public safety and the welfare of the defendant or person, the designee of the department of mental health and addiction services or the managing officer of the institution or director of the facility or program to which the defendant or person is committed may recommend a termination of the defendant's or person's commitment or a change in the conditions of the defendant's or person's commitment.

(G) In a hearing held pursuant to division (C) or (D)(1) of this section, the prosecutor has the burden of proof as follows:

(2) For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person.

(H) In a hearing held pursuant to division (C) or (D)(1) or (2) of this section, the prosecutor shall represent the state or the public interest.

(I) At the conclusion of a hearing conducted under division (D)(1) of this section regarding a recommendation from the designee of the department of mental health and addiction services, managing officer of the institution, or director of a facility or program, the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly.

{¶ 5}   Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 6}   We have reviewed two previous denials of similar requests in 2015 and 2017.  In affirming the trial court's decisions, we found "a trial court retains discretion to deny a request for increased privileges even if the evidence in opposition to the requested modification presented by the state does not rise to the level of clear and convincing evidence."  *Stutler I*, at ¶ 13.  "We see no reason to alter our finding in this case and continue to hold that the trial court retains its discretion even if the prosecutor opposes the change and does not provide clear and convincing evidence of a threat to public safety or a person."  *Stutler II,* at ¶ 13.

{¶ 7}   Appellant makes the same arguments about the standards of review as he made in *Stutler II.*  We hereby incorporate in this case the lengthy and well-reasoned

analysis as set forth in *Stutler II* at ¶ 14-26, and will review the evidence presented under those standards.

{¶ 8}   Three individuals testified during the hearing: psychologist Michael R. Kerschner, Ph.D., psychiatrist Jagdish Mude, M.D., and appellant.

{¶ 9}   Dr. Kerschner sees appellant two times a week for group therapy and one time per week for individual therapy which began about eight months prior to the hearing.  T. at 14, 42-43.  He is not on appellant's treatment team, but serves as a psychologist on the treatment team "when important issues come up."  T. at 23.  He does not participate in treatment team meetings.  T. at 43-44.  He has never known appellant to participate in violence, even when confronted with violent conduct by others.  T. at 18.  He explained how he reviewed appellant's file and the trial court's prior decisions, and crafted a very specific plan for the level change, taking into account the trial court's concerns.  T. at 15-17.  The plan was to fit appellant with a GPS device during outings, and he would be accompanied by himself and another mental health professional, as well as a plainclothes police officer.  T. at 26, 28, 31.  However, he admitted the addition of the police officer was not guaranteed every time.  T. at 31.  He opined, within a reasonable degree of medical certainty, that the plan would be safe for both appellant and the general public as appellant's "risk assessment" was low.  T. at 34-36.  He stated appellant was in "remission" for his bipolar disorder, understood his mental condition with "great clarity and insight," and has expressed "profound" remorse. T. at 17, 20-21.  On cross-examination, Dr. Kerschner admitted appellant suffers from bipolar disorder with psychotic features which could reemerge.  T. at 40-41.  Between staying at the facility versus being out in the community with supervision, staying at the facility would be "the more-structured situation."  T. at 41.

{¶ 10} Dr. Mude started caring for appellant in July 2018. T. at 48. He sees appellant about once a month for 25-30 minutes. T. at 55. Appellant's diagnosis is bipolar disorder with psychotic features. T. at 60. Dr. Mude stated appellant's medications are "working excellent on him." T. at 48. Dr. Mude was part of the group that developed the Level IV community plan and was in support of the plan. T. at 49. He opined that appellant "has the capacity to keep anger in control, and he is working almost for five years without any problem." T. at 63. He admitted that future violence could take place if appellant stopped taking his medication. T. at 63-64. He explained that one time on a medical trip for a dental issue, appellant had the opportunity to run away, but chose not to. T. at 50. "The staff was not there for almost 45 minutes and he was alone there. So if he wanted to, he could have run away but he never took that chance." T. at 50-51.

{¶ 11} Appellant stated since 2014, he went on at least twelve Level IV outings for medical care. T. at 69. In August 2019, he went to a dental appointment for oral surgery. *Id.* He was accompanied by two staff members. Following the surgery, he was returned to the lobby and the staff members were not present. T. at 70. An employee with the surgeon's office remained alone with him until a staff member returned. T. at 70-71. He was unattended by staff personnel at the surgeon's office for about 45 minutes. T. at 50. He was not wearing any physical restraints and did not attempt to escape. T. at 71. He understands his bipolar disorder is a lifetime disorder that has to be managed and "deviating from that plan could cause a reoccurrence of, of my condition." T. at 74-75. He testified to feeling remorse. T. at 82.

{¶ 12} We note the record is devoid of any expert reports.

{¶ 13} In its December 26, 2019 judgment entry denying appellant's movement to Level IV for community privileges, the trial court outlined appellant's treatment from the beginning (2012). In 2014, the same trial court approved appellant's transfer from maximum security (Twin Valley) to Northcoast Behavioral Healthcare. In June 2014, the trial court approved Level III movement to participate in Level III activities and the less restrictive Level IV movement for medical treatment. The trial court also discussed the 2015 and 2017 hearings and decisions.

{¶ 14} The trial court stated one of the major issues of concern was public safety, and noted he was disturbed about the handling of the Level IV medical outing for the oral surgery: "[e]ven more worrisome is the previous gross negligence of the Northcoast staff on a medical privilege visit." The trial court questioned Dr. Kerschner's working relationship with appellant as the psychologist was not a member of appellant's treatment team and Dr. Kerschner acknowledged the team would know the patient the best. The trial court was troubled with the fact that Dr. Mude never reviewed any reports from 2015 or 2017 regarding appellant's history. The trial court stated the following:

> As the Court has previously pronounced, one of its main roles is to protect the public. This Court works within a very small margin of error; if the trial court allows these trips and Defendant were to cause serious injury to another, the Court, not the psychiatrist, would bear the legal, moral and ethical responsibility. The crimes in this particular case were violent, lethal and gruesome. These were not crimes that were committed

because of a lapse of judgment, but claimed to be committed due to "delusional visions by demons."

{¶ 15} The trial court stated while it respected the opinion of the two professionals, it simply disagreed with their ultimate determination. The trial court concluded the professionals did not establish a clear understanding of appellant's complete treatment plan.

{¶ 16} As we have previously stated, the trial court has the discretion to "approve, disapprove, or modify the recommendation." R.C. 2945.401(I). Given the evidence presented, we cannot say the trial court abused its discretion in disapproving the request for movement to Level IV for community privileges. Much of Dr. Kerschner's testimony centered on the secure nature of the Level IV community plan, although he could not guarantee all the recommendations of the plan. Given the security breach of the Level IV medical plan, we find it is reasonable for the trial court to be concerned about public safety at this point in time.

{¶ 17} Upon review, we do not find the trial court's decision was "unreasonable, arbitrary or unconscionable."

{¶ 18} Assignments of Error I and II are denied.

{¶ 19} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby affirmed.

By Wise, Earle, J.

Baldwin, P.J. and

Wise, John, J. concur.

EEW/db