[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Stutler*, Slip Opinion No. 2022-Ohio-2792.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-2792

THE STATE OF OHIO, APPELLEE, *v*. STUTLER, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Stutler*, Slip Opinion No. 2022-Ohio-2792.]**

*R.C. 2945.401—Burden of proof—Changes to commitment conditions following finding of not guilty by reason of insanity—Under the plain language of R.C. 2945.401, unless the state proves by clear and convincing evidence that the recommended change would result in a threat to public safety or any person, the trial court does not have discretion to deny the requested change—Court of appeals' judgment reversed and cause remanded.*

(No. 2021-0428—Submitted March 9, 2022—Decided August 16, 2022.)

APPEAL from the Court of Appeals for Stark County,

No. 2020 CA 00022, 2021-Ohio-481.

_____

STEWART, J.

{¶ 1} In this appeal from a judgment of the Fifth District Court of Appeals, we are asked to determine the extent of a trial court's discretion under R.C.

2945.401 to deny a recommended change in the commitment conditions of a mentally ill person subject to court-ordered commitment to a mental-health facility. We hold that under the plain language of R.C. 2945.401, unless the state proves by clear and convincing evidence that the recommended change would result in a threat to public safety or any person, the trial court does not have discretion to deny the requested change. Since the record before us demonstrates that the trial court might have denied the requested change in the conditions of appellant Jeremy Stutler's commitment based on factors other than those specified in the statutory provisions concerning the state's burden of proof, we reverse the court of appeals' judgment and remand the case to that court for it to consider the evidence under the appropriate standard.

**Background**

{¶ 2} In 2012, at a bench trial before the Stark County Court of Common Pleas, Stutler was found not guilty by reason of insanity of murder, tampering with evidence, and abuse of a corpse. As required by R.C. 2945.40 and 2945.401(A), the trial court ordered Stutler committed to a mental-health facility for up to the maximum term that could be imposed as a prison sentence if Stutler had been convicted of the most serious offense charged.

{¶ 3} Stutler was initially committed to the Timothy B. Moritz Forensic Unit of Twin Valley Behavioral Healthcare ("Twin Valley"), a maximum-security facility that provides inpatient care for acutely mentally ill adults. After spending over a year receiving treatment at Twin Valley, and on the recommendation of a psychologist with Twin Valley, the trial court determined that Stutler's mental health was sufficiently stable for him to be transferred out of a maximum-security setting. Accordingly, Stutler was transferred to Northcoast Behavioral Healthcare to continue his commitment. Following a status-review hearing in June 2014, the trial court granted Stutler Level III movement to participate in additional activities at the facility. In October 2014, the trial court granted Stutler additional latitude

for purposes of medical treatment ("Level IV medical privileges") that permitted him supervised leave from Northcoast for medical treatment not available at the facility.

{¶ 4} In February 2015, the chief clinical officer at Northcoast filed a request with the trial court asking that Stutler be allowed to leave Northcoast to go on trips outside the facility while under the supervision of Northcoast staff or his case manager ("Level IV community movement"). The trial court denied the request, and the Fifth District affirmed that decision. *State v. Stutler*, 2015-Ohio-5518, 55 N.E.3d 600, ¶ 17-18 (5th Dist.). In 2017, the chief clinical officer filed a second request for Stutler to be granted Level IV community movement. The trial court denied the second request, and the Fifth District affirmed that decision. *State v. Stutler*, 2018-Ohio-1619, 101 N.E.3d 738, ¶ 29 (5th Dist.). In 2019, the chief clinical officer filed a third request for Stutler to be granted Level IV community movement, which included the requirement that Stutler be monitored by electronic GPS during any outings. The trial court denied the third request, this time after holding a hearing.

{¶ 5} At the hearing, a psychologist and a psychiatrist testified regarding Stutler's progress while committed and on his medications and Stutler testified on his own behalf. Both the psychologist and the psychiatrist testified that in the years since his commitment, Stutler had shown no violent behavior toward anyone, even when others showed violent behavior toward him. The testimony demonstrated that Stutler was nonviolent when properly medicated. The state did not call any witnesses to testify at the hearing, but it did cross-examine the psychologist. Further, the court questioned both the psychologist and the psychiatrist.

{¶ 6} The trial court's decision denying the request for Level IV community movement began with a summary of the charges for which Stutler had been found not guilty by reason of insanity, Stutler's initial treatment at Twin Valley, and his transfer to Northcoast. The court then gave a detailed history of the prior requests

for Stutler to be granted Level IV community movement and the reasons why those requests were denied. Turning to the chief clinical officer's most recent request for Level IV community movement, the court opined that the testimony presented at the hearing by the psychologist, the psychiatrist, and Stutler "[was] centered on the fact that [Stutler] had not shown any violence at Northcoast, not contributed to any problems, and in their opinion, appeared fit to follow the treatment plan that had been proposed, which features community trips supported by [Northcoast] staff and police." The court explained that it nevertheless remained concerned about the potential threat to public safety. The court indicated that some of its concern stemmed from Northcoast's previous failure to properly supervise Stutler during an offsite dental appointment conducted under his Level IV medical privileges. Additionally, the court was skeptical about whether the psychologist and the psychiatrist had had a sufficiently close working relationship with Stutler or a sufficient understanding of the history of his case and past treatment such that they could accurately ascertain his level of risk to the public. In that regard, the trial court stated:

> This Court works within a very small margin of error; if the trial court allows these trips and [Stutler] were to cause serious injury to another, the Court, not the psychiatrist, would bear the legal, moral and ethical responsibility. The crimes in this particular case were violent, lethal and gruesome. These were not crimes that were committed because of a lapse of judgment, but claimed to be committed due to "delusional visions by demons."

Lastly, the court noted that the victim's family opposed the request for Level IV community movement, and it stated that "[w]hile the Court does not find the victims' recommendation the ultimate legal authority, the Court certainly values

4

their input." The court concluded that although it respected the opinions of the psychologist and the psychiatrist who testified at the hearing, it disagreed with their ultimate determinations that Stutler was fit for Level IV community movement.

{¶ 7} Stutler appealed the trial court's decision to the Fifth District, raising two assignments of error: (1) the trial court abused its discretion in denying him Level IV community movement and its decision was not supported by clear and convincing evidence and (2) the trial court had no discretion to deny the requested level change in the absence of clear and convincing evidence presented by the state showing that the level change should not be granted due to a public-safety risk. 2021-Ohio-481, ¶ 7-8. In affirming the trial court's denial of the request for Level IV community movement, the Fifth District determined—consistently with its previous decisions affirming the trial court's denials of the 2015 and 2017 requests for Level IV community movement—that a trial court has discretion under R.C. 2945.401 to deny a request for increased privileges even if the state opposes the request and fails to provide clear and convincing evidence of a threat to public safety. *Id.* at ¶ 12-13, 21-23. The court of appeals observed that Stutler suffers from "bipolar disorder with psychotic features" and that the testifying psychiatrist admitted that Stutler had the capacity to commit future violence if he were to stop taking his medication. *Id.* at ¶ 15-16. The court of appeals also noted the trial court's statement that it " 'works within a very small margin of error' " and would bear the responsibility if any harm came to others due to its granting the request for Level IV community movement. *Id.* at ¶ 20. In light of those facts and because the testimony established that Northcoast's staff had previously failed to properly supervise Stutler when he attended an offsite dental appointment, the court of appeals determined that the trial court's concern for public safety was reasonable. *Id.* at ¶ 20-22. Finding no abuse of discretion, the appellate court affirmed the trial court's denial of the request for Level IV community movement. *Id.* at ¶ 22-23.

**{¶ 8}** Stutler appealed to this court, and we accepted the following proposition of law for review: "The trial court has no discretion to deny a level change requested in the absence of clear and convincing evidence indicating that the level change should not be granted." *See* 163 Ohio St.3d 1452, 2021-Ohio-2069, 169 N.E.3d 680.

**Analysis**

**{¶ 9}** The issue before this court concerns a pure question of law: When a request for a change in a person's commitment conditions has been filed in the trial court, does the state have to show by clear and convincing evidence that the proposed change represents a threat to public safety or any person before the trial court may deny the requested change, or does the court retain discretion to deny the request in the absence of such evidence? The answer to this question lies in the reconciliation of two statutory provisions, R.C. 2945.401(G)(2) and (I). We hold that a trial court lacks discretion to deny a request for a level change when the state has failed to present clear and convincing evidence that the change represents a threat to public safety or any person.

**{¶ 10}** The procedure at issue here is governed by R.C. 2945.401. The statute provides a comprehensive scheme that gives Ohio's trial courts continuing jurisdiction over the commitment conditions of persons committed to mental-health institutions by court order. R.C. 2945.401(A) and (J)(1) provide that if a defendant in a criminal case is found not guilty by reason of insanity and then committed to a mental-health institution, the defendant shall remain subject to the jurisdiction of the trial court until final termination of the commitment, which occurs through either early termination of the commitment by the trial court or the expiration of the maximum prison term that could have been imposed if the person had been convicted of the most serious offense charged. The statute requires that the institution at which the person has been committed provide a written report to the trial court on the person's treatment progress after the first six months of treatment

and on a biannual basis thereafter. R.C. 2945.401(C). Within 30 days of receiving the report, the trial court must hold a hearing on the continued commitment of the person or any requested changes in the conditions of the person's commitment. *Id.* At any time after evaluating the risk to public safety and the welfare of the committed person, the managing officer of the institution or the director of the facility or program to which the person is committed may recommend to the trial court that the person's commitment be terminated or that the conditions of the person's commitment be changed. R.C. 2945.401(D).

{¶ 11} R.C. 2945.401(E) outlines various factors that a trial court must consider when ruling on a recommendation that a committed person be granted "nonsecured status or termination of commitment." In addition to any other relevant factors, R.C. 2945.401(E) states that the trial court must consider:

(1) Whether, in the trial court's view, the defendant [found incompetent to stand trial] or person [found not guilty by reason of insanity] currently represents a substantial risk of physical harm to the defendant or person or others;

(2) Psychiatric and medical testimony as to the current mental and physical condition of the defendant or person;

(3) Whether the defendant or person has insight into the defendant's or person's condition so that the defendant or person will continue treatment as prescribed or seek professional assistance as needed;

(4) The grounds upon which the state relies for the proposed commitment;

(5) Any past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society; [and]

(6) If there is evidence that the defendant's or person's mental illness is in a state of remission, the medically suggested cause and degree of the remission and the probability that the defendant or person will continue treatment to maintain the remissive state of the defendant's or person's illness should the defendant's or person's commitment conditions be altered.

The prosecutor is charged with representing the state or the public interest at a hearing on an institution's recommendation for a change in a person's commitment conditions. R.C. 2945.401(H). Further, R.C. 2945.401(G)(2) makes clear that the prosecution bears the burden of proving by clear and convincing evidence that a proposed change in the conditions of a person's commitment to a less restrictive status represents a threat to public safety or any person. Finally, R.C. 2945.401(I) states that at the conclusion of the hearing on an institution's recommended change in a person's commitment conditions, "the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly."

{¶ 12} In affirming the trial court's denial of the request for Stutler to be granted Level IV community movement, the Fifth District found dispositive the language in R.C. 2945.401(I) stating that a trial court "may" approve, disapprove, or modify a recommendation—determining that this language provided the trial court with discretion to deny the request for a change in Stutler's commitment level even in the absence of the state's providing clear and convincing evidence that granting the recommendation would result in a threat to public safety. *See* 2021-Ohio-481 at ¶ 11-12, 21-23. But R.C. 2945.401(I) may not be read in a vacuum. R.C. 2945.401(I) is part of a comprehensive statutory scheme that also requires the prosecutor to represent the state or the public interest, R.C. 2945.401(H), and to carry the burden of proving by clear and convincing evidence that the

recommended change would result in a threat to public safety or any person, R.C. 2945.401(G)(2). These provisions must be read in harmony.

{¶ 13} In its brief and oral argument before this court, the state has suggested that the procedure outlined in R.C. 2945.401 is designed to function like a motion for summary judgment, whereby the institution petitioning the trial court for a change in the conditions of commitment has the initial burden of producing some competent, credible evidence that the recommended change is warranted and would not pose a threat to public safety. The state asserts that only when this initial burden is met does it then have the burden of rebutting the evidence by presenting its own evidence showing that the recommended change, if granted, would result in a threat to public safety. This suggested analysis may make sense when R.C. 2945.401(E) applies. However, the recommended change in commitment level at issue here does not trigger the application of R.C. 2945.401(E).

{¶ 14} Under the plain language of R.C. 2945.401(E)—which lists the statutory factors that a trial court must consider when ruling on a request for *nonsecured status or termination of commitment*—the trial court must consider (1) whether the committed person represents a substantial risk of physical harm to the person or others, (2) any psychiatric and medical testimony regarding the status of the person's mental and physical health, (3) the person's appreciation and understanding of their mental-health condition, (4) the prosecution's grounds for the proposed commitment, (5) the committed person's history relevant to the person's conformity with the laws, regulations, and values of society, and (6) any evidence regarding remission of the person's mental illness and the likelihood that the person will continue treatment to maintain the remissive state if the person's commitment conditions are altered. But those factors apply only when there has been a request under R.C. 2945.401(D)(1) for "*nonsecured status or termination of commitment*." (Emphasis added.) In this case, the institution's request under R.C.

2945.401(D)(1) was for off-grounds supervised movement, not nonsecured status or termination of commitment. Therefore, R.C. 2945.401(E) does not apply.

{¶ 15} That a trial court has more discretion to disapprove or modify an institution's recommendation for a committed person's nonsecured movement or termination of the person's commitment explains why the legislature chose to use the word "may" in R.C. 2945.401(I). R.C. 2945.401(I)'s statement that the trial court "may approve, disapprove, or modify" a recommendation made under R.C. 2945.401(D)(1) shows that the court has more discretion to disapprove or modify a recommendation for nonsecured status or termination of commitment based on its findings under R.C. 2945.401(E) than it does for other recommendations for changes that involve the person's remaining supervised. In this context, the use of the word "may" is nothing more than a reflection of the trial court's options, which are based on the type of recommended change in commitment status or conditions before the court. *See United States v. Rogers*, 461 U.S. 677, 706, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983) ("The word 'may,' when used in a statute, usually implies some degree of discretion. This common-sense principle of statutory construction is by no means invariable, however, * * * and can be defeated by indications of legislative intent to the contrary or by obvious inferences from the structure and purpose of the statute" [footnote omitted]). When the recommended change in a person's commitment status or conditions does not include a request for nonsecured status or termination of the person's commitment, however, the prosecution's burden of proof under R.C. 2945.401(G)(2) remains in full force and effect. Thus, unless the prosecution proves by clear and convincing evidence that the institution's recommended change in the person's commitment conditions would result in a threat to public safety or any person, the trial court does not have discretion to deny the recommended change.

{¶ 16} In this case, the Fifth District concluded that the trial court had discretion to deny the requested change in Stutler's commitment level even if the

state failed to meet its burden of proof. That legal conclusion is incorrect, and thus we must reverse the appellate court's judgment. We are cognizant, however, of the fact that the state can meet its burden of proof by introducing its own evidence and through cross-examining and impeaching Stutler's evidence. In this case, the prosecution did engage in cross-examination of one of Stutler's witnesses at the December 12, 2019 hearing on the institution's request for Stutler to be granted Level IV community movement. Accordingly, we reverse the judgment of the Fifth District Court of Appeals and remand this case to that court for it to consider whether the state met its burden of proof under R.C. 2945.401(G) and therefore whether the trial court's decision denying the recommended change in Stutler's commitment conditions should be affirmed or reversed.

Judgment reversed<br>and cause remanded.

O'CONNOR, C.J., and KENNEDY, FISCHER, DEWINE, DONNELLY, and BRUNNER, JJ., concur.

_____

Kyle L. Stone, Stark County Prosecuting Attorney, and Vicki L. DeSantis, Assistant Prosecuting Attorney, for appellee.

Michael A. Partlow, for appellant.

Timothy Young, Ohio Public Defender, and Peter Galyardt, Assistant Public Defender, urging reversal for amicus curiae, Office of the Ohio Public Defender.

_____