[Cite as *State v. Heltzel*, 2024-Ohio-1742.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2023-T-0088** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| PATRICK LAWSON HELTZEL, | |
| Defendant-Appellant. | Trial Court No. 2013 CR 00219 |

# **O P I N I O N**

Decided: May 6, 2024
Judgment: Affirmed

*Dennis Watkins*, Trumbull County Prosecutor, and *Ryan J. Sanders*, Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*John B. Juhasz*, 7081 West Boulevard, Suite 4, Youngstown, OH 44512 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, Patrick Lawson Heltzel, appeals from the judgment of the Trumbull County Court of Common Pleas, denying Heltzel conditional release from Heartland Behavioral Healthcare. For the following reasons, we affirm the judgment of the lower court.

{¶2} On April 12, 2013, Heltzel was indicted by the Trumbull County Grand Jury for two counts of Aggravated Murder, unclassified felonies, in violation of R.C. 2903.01(A), (B), and (F), and Aggravated Robbery, a felony of the first degree, in violation of R.C. 2911.01(A)(1) and (3).

{¶3} On August 14, 2014, the trial court issued an order finding Heltzel incompetent to stand trial. He was subsequently restored to competence and a trial was held. On June 1, 2016, the court issued a Judgment Entry, finding Heltzel not guilty by reason of insanity. The court found that Heltzel went to the home of the victim while suffering psychotic delusional beliefs, placed the victim in a chokehold, stabbed him repeatedly, and beat him with a remote control, causing his death, and subsequently removed from the victim's home a Bible and a ring. The court noted a delusional belief that the victim had previously sexually abused him in an alternate life. It concluded that Heltzel suffered from schizophrenia at the time of the offenses and, as a result of that disease, he did not know the wrongfulness of his actions. It ordered an evaluation by the Forensic Psychiatric Center of Northeast Ohio to determine the least restrictive treatment alternative.

{¶4} On June 23, 2016, the court found Heltzel was a mentally ill person subject to court order and that the least restrictive alternative consistent with public safety and Heltzel's welfare was to be committed to Heartland Behavioral Healthcare. A six-month review was conducted in 2017, where the court found that his commitment remained the least restrictive alternative and ordered he remain on his current level of privilege, level two.

{¶5} During review hearings held in 2019, 2021, and 2023, the court issued orders that Heltzel continue on inpatient treatment for two years. During this time, the court also issued orders granting requests to advance Heltzel to level three, four, and five privileges relating to his movement and supervision.

{¶6} In 2023, a request that Heltzel be granted conditional release was submitted.

2

On August 23, 2023, a hearing was held on this issue. The parties stipulated to the Conditional Release Plan and Evaluation, which was conducted by Kristi Lang, a psychologist at Heartland Behavioral Healthcare.

{¶7} Dr. Lang testified that she has worked with Heltzel for over a year, seeing him on a daily basis, and evaluated him for conditional release. She stated that he is a "model patient" and consistently attended group sessions made available to him. His participation "showed * * * he had very good insight into his mental health and need for medication." She stated that he had done well in his movement through the level system, having no incidents in groups, outings, or weekend overnight visitations with his mother. She testified that he consistently tested negative for drugs and alcohol and was compliant with his medication. She testified that he understood the need for medication and to remain sober. She testified that it was the opinion of herself and the treatment team that he is "at his baseline," i.e., having no symptoms, and has been for a number of years. She recommended he be put on conditional release, with which the forensic monitor agreed. She indicated that if he was released, Heltzel would be on a conditional release plan, requiring him to receive outpatient mental health treatment, substance abuse treatment, and continue with medication including a long-acting injectable.

{¶8} The prosecutor inquired, "Would you agree that you can't predict with a hundred percent certainty how he'll behave * * * once he's released," to which she responded in the affirmative. He inquired, "that's why we have to put some of these guardrails in place, right?" with which she also agreed. He inquired about the observation in Heltzel's evaluation that his family was unable to control him in the past when he was spiraling, which Dr. Lang noted was prior to his hospitalization. Dr. Lang indicated,

3

pursuant to the court's questioning, that Heltzel had been on the same medication for his schizophrenia since 2016. A Second Opinion Evaluation by Dr. Jessica Hart was also submitted, in which she recommended that Heltzel be granted conditional release. A representative of the victim's family spoke and stated that he should "stay in prison."

{¶9} The trial court issued an October 19, 2023 Judgment Entry denying Heltzel conditional release and ordering that he remain at Heartland Behavioral Healthcare at his present level of confinement, with further review in two years. The court stated that it considered the evidence, the treatments received by Heltzel, the likelihood of continued compliance, the risk to public safety, and Heltzel's welfare. It found "by clear and convincing evidence that [Heltzel] remains a mentally ill person subject to court order pursuant to O.R.C. Section 2945.401." It further indicated: "In full and complete review of the entire case, the Court would be remiss if it did not acknowledge the seriousness and brutal nature of the underlying crime. Furthermore, the Court notes the possible consciousness of guilt evidenced by [Heltzel] when he fled the state following the murder. The Court finds that full conditional release at this time would demean the seriousness of the offense and is premature."

{¶10} Heltzel timely appeals and raises the following assignment of error:

{¶11} "The trial court abused its discretion when it denied the Appellant conditional release in violation of U.S. CONST., amend. XIV and OHIO CONST., art. I, §§1, 2, and 16 and R.C. 2945.401."

{¶12} Heltzel argues that the court erred in denying conditional release because the evidence presented supported release and no contrary evidence was presented, that the prosecutor's burden to prove by clear and convincing evidence that the change to his

4

conditions of commitment will represent a threat to the public safety was not met, and that the court's comments and failure to grant the motion indicated that Heltzel was being treated as though he was serving a criminal sentence for a conviction rather than being held as an acquittee who was not guilty by reason of insanity.

{¶13} R.C. 2945.401 sets forth the procedure for terminating or changing commitment conditions for a person who has been found not guilty by reason of insanity. "R.C. 2945.401(A) and (J)(1) provide that if a defendant in a criminal case is found not guilty by reason of insanity and then committed to a mental-health institution, the defendant shall remain subject to the jurisdiction of the trial court until final termination of the commitment." *State v. Stutler*, 169 Ohio St.3d 639, 2022-Ohio-2792, 207 N.E.3d 671, ¶ 10. "At any time after evaluating the risk to public safety and the welfare of the committed person, the managing officer of the institution or the director of the facility or program to which the person is committed may recommend to the trial court that the person's commitment be terminated or that the conditions of the person's commitment be changed." *Id.*, citing R.C. 2945.401(D). After a hearing, "the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly." R.C. 2945.401(I).

{¶14} "R.C. 2945.401(E) sets forth various factors that a trial court must consider when ruling on a recommendation that a committed individual be granted 'nonsecured status' or hav[e] his or her commitment terminated." *State v. Hickman*, 11th Dist. Ashtabula No. 2022-A-0114, 2023-Ohio-1793, ¶ 15. "Nonsecured status" is defined, in relevant part, as "any unsupervised, off-grounds movement * * * or any conditional release, that is granted to a person * * * who is found not guilty by reason of insanity * * *," which applies in the present matter. R.C. 2945.37(A)(3). The statutory factors to be considered in

5

granting nonsecured status are:

> (1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others;
>
> (2) Psychiatric and medical testimony as to the current mental and physical condition of the defendant or person;
>
> (3) Whether the defendant or person has insight into the defendant's or person's condition so that the defendant or person will continue treatment as prescribed or seek professional assistance as needed;
>
> (4) The grounds upon which the state relies for the proposed commitment;
>
> (5) Any past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society;
>
> (6) If there is evidence that the defendant's or person's mental illness is in a state of remission, the medically suggested cause and degree of the remission and the probability that the defendant or person will continue treatment to maintain the remissive state of the defendant's or person's illness should the defendant's or person's commitment conditions be altered.

R.C. 2945.401(E).

{¶15} At a hearing to change commitment conditions, the prosecutor represents the State and public interest. R.C. 2945.401(H). In the case that a conditional release is sought, the applicable burden of proof is found in R.C. 2945.401(G)(2). *Hickman* at ¶ 16. Pursuant to that section, the prosecutor has the burden of proof to show by clear and convincing evidence, in the case of "a recommendation for a change in the conditions of the commitment to a less restrictive status, * * * that the proposed change represents a threat to public safety or a threat to the safety of any person."

{¶16} An abuse of discretion standard has been applied to appellate review of a trial court's ruling on a motion for conditional release. *Hickman* at ¶ 21. An abuse of

6

discretion is the trial court's "'failure to exercise sound, reasonable, and legal decision-making.'" *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62, quoting *Black's Law Dictionary* 11 (8th Ed.2004). In applying this standard, this court noted the recent clarification of the standard by the Ohio Supreme Court in *Stutler*, 169 Ohio St.3d 639, 2022-Ohio-2792, 207 N.E.3d 671. In *Stutler*, the court explained the following:

> That a trial court has more discretion to disapprove or modify an institution's recommendation for a committed person's nonsecured movement or termination of the person's commitment explains why the legislature chose to use the word "may" in R.C. 2945.401(I). R.C. 2945.401(I)'s statement that the trial court "may approve, disapprove, or modify" a recommendation made under R.C. 2945.401(D)(1) shows that the court has more discretion to disapprove or modify a recommendation for nonsecured status or termination of commitment based on its findings under R.C. 2945.401(E) than it does for other recommendations for changes that involve the person's remaining supervised. In this context, the use of the word "may" is nothing more than a reflection of the trial court's options, which are based on the type of recommended change in commitment status or conditions before the court.

*Id.* at ¶ 15. This court concluded: "the trial court in this matter, according to the Court in *Stutler*, enjoyed broader discretion in reaching its conclusion [denying motion for conditional release] than if the movant sought a change in commitment level, such as one involving 'off-grounds supervised movement.'" *Hickman* at ¶ 18.

{¶17} In the present matter, the lower court indicated that it had reviewed all of the evidence, the treatments received by Heltzel, the likelihood of continued compliance, the risk to public safety, and Heltzel's welfare. It ultimately concluded that conditional release should not be granted. In addressing the motion for conditional release, the court is to consider the factors listed in R.C. 2945.401(E), outlined above. While the record indicates that Heltzel had made progress in his treatment, had insight into his mental health condition, and had not exhibited symptoms of his mental illness for a number of years, the

7

court was also required to consider his "past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society." R.C. 2945.401(E)(5). The trial court expressed concern with the seriousness of the crime, which demonstrates its consideration of his past history relevant to conformity to the law. *See Hickman* at ¶ 20 (observing that the severity of the defendant's history of violence, as well as the less rigorous monitoring of the defendant, were relevant considerations by the court in denying the motion for conditional release). There is nothing in the statute that requires the factors be equally balanced; the trial court has the discretion to determine the proper outcome based on these factors, although its consideration is "not limited to" such factors. R.C. 2945.401(E).

{¶18} While Heltzel argues that the entirety of the evidence supported conditional release, additional facts in the record of the conditional release hearing further support concerns relating to Heltzel's history of violence, which weighed against granting his motion. The record indicates that the crime giving rise to the present matter included the choking, stabbing and beating of the victim, leading to his death. Prior to that crime, in early 2013, Heltzel also slapped his father and threatened to kill him with a knife. Further, the Conditional Release Evaluation completed by Dr. Lang indicated that Heltzel has a "risk factor for violence" in that he has a "history of noncompliance with treatment in the community." The report indicates that he had previously been prescribed antidepressants following a suicide attempt but was "noncompliant" with taking medication. Further, after the incident with his father in early 2013, during which he experienced delusions, he was admitted to Heartland. However, although his symptoms improved during treatment there, "[a]fter his hospitalization, he was noncompliant with appointments, medication, and he

8

continued to use substances after discharge." The record indicated that he had a prior history of use of various illegal drugs recreationally, including LSD, cocaine, and prescription medications. Given these circumstances, it is evident there were legitimate concerns about Heltzel's release into the community given his past history and the lower court exercised its discretion to deny the motion consistent with these concerns.

{¶19} Hetzel argues that he is an "acquittee" since a finding of not guilty by reason of insanity is "not a conviction of a criminal offense," *State v. Tuomala*, 104 Ohio St.3d 93, 2004-Ohio-6239, 818 N.E.2d 272, ¶ 16-17, and, thus, the court could not consider the seriousness of his criminal offense to continue to hold him. It has been held that "[u]nlike criminal defendants who are confined for punishment, insanity acquittees are confined for treatment and safety." *State v. Street*, 2023-Ohio-4405, 230 N.E.3d 1229, ¶ 58 (7th Dist.). This, however, does not preclude the court from considering his past violence and noncompliance with the laws in denying a request for conditional release, as discussed above. While his progress and improvement of his mental health condition are factors to take into account, the past conduct is also a significant factor as it helps to evaluate the threat posed to the public. While the trial court may have used inartful language in discussing "demeaning the seriousness of the offense" rather than referencing the factors under R.C. 2945.401(E), it is still permitted to consider his past record and offenses in ruling on the motion.

{¶20} Heltzel raises arguments regarding how Ohio's civil commitment statute has been applied by various courts and whether such application violates the Equal Protection Clause. This issue was not raised at the below hearing. Arguments regarding equal protection are waived when no objection is made at the trial court. *State v. Dudas*, 11th

9

Dist. Lake Nos. 2006-L-267 and 2006-L-268, 2007-Ohio-6739, ¶ 106. Nonetheless, we do not find an equal protection violation.

{¶21} Equal protection "analysis begins with the rebuttable presumption that statutes are constitutional." *State v. Peoples*, 102 Ohio St.3d 460, 2004-Ohio-3923, 812 N.E.2d 963, ¶ 5. "We need not even reach the equal protection issue if all offenders in a class are treated equally." *Id.* at ¶ 6. Under the statute at issue here, the legislature sets forth requirements for all offenders who are found not guilty by reason of insanity. This applies to all offenders in the same manner. That Heltzel takes issue with the court's application of the factors to be considered and the burden applied does not mean that the law violates the Equal Protection Clause.

{¶22} Heltzel also argues that there was a violation of the separation of powers doctrine when the prosecutor was not required to meet his burden in the present matter. This really amounts to a challenge that there was a lack of evidence presented by the prosecutor to support denial of Heltzel's motion. As noted above, there was evidence in the record, through the jointly admitted exhibits, showing concerns with Heltzel's release, specifically his history of violence and noncompliance with treatment for mental health concerns in addition to use of illegal drugs that may compromise treatment.

{¶23} In its brief, the State concedes that the trial court "did not make the appropriate findings under R.C. 2945.401," noting the lack of a finding regarding the least restrictive alternative and the court's finding that conditional release would demean the seriousness of the offense. However, Heltzel does not argue that the court failed to make the proper findings or make findings relating to the least restrictive alternative but only that the findings were not supported by the record: "the finding that conditional release was not

10

the least restrictive environment consistent with treatment goals and public safety was against the manifest weight of the evidence." While the State contends that the court did not comply with R.C. 2945.401, this statute does not reference findings that the court is required to make in granting a conditional release but states that, after a hearing on a request for change in the terms of commitment, the "trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly." R.C. 2945.401(I). Further, while the trial court must consider the factors listed in R.C. 2945.401(E) when ruling on a request for nonsecured status, it has been held that "R.C. 2945.401(E) does not mandate findings on the factors." *State v. Tanner*, 12th Dist. Butler No. CA2021-12-167, 2022-Ohio-4224, ¶ 37; *State v. Henderson*, 5th Dist. Fairfield No. 16-CA-23, 2017-Ohio-2620, ¶ 29. The statute also does not limit consideration to the six factors only. *Henderson* at ¶ 29. While it is accurate the court used wording that conditional release would "demean the seriousness of the offense," which is typically related to criminal sentence sentencing, as discussed above, the court's choice of wording does not change that it expressed concern about Heltzel's history, a relevant consideration that supported denying the motion for conditional release.

{¶24} The sole assignment of error is without merit.

{¶25} For the foregoing reasons, the judgment of the Trumbull County Court of Common Pleas, denying Heltzel conditional release from Heartland Behavioral Healthcare, is affirmed. Costs to be taxed against appellant.

EUGENE A. LUCCI, P.J.,

MARY JANE TRAPP, J.,

concur.

11

Case No. 2023-T-0088