[Cite as *State v. Honaker*, 2016-Ohio-5727.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| *Plaintiff-Appellee* | : | Appellate Case No. 26877 |
| | : | |
| v. | : | Trial Court Case No. 2013-CR-1649 |
| | : | |
| DANIEL HONAKER | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| *Defendant-Appellant* | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 9th day of September, 2016.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHELE D. PHIPPS, Atty. Reg. No. 0069829, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
      Attorney for Plaintiff-Appellee

VICTOR A. HODGE, Atty. Reg. No. 007298, 117 South Main Street, Suite 400, Dayton, Ohio 45422
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-appellant, Daniel Honaker, appeals from the decision of the Montgomery County Court of Common Pleas to disapprove a recommended change in the conditions of his commitment with Summit Behavioral Healthcare from on-grounds unsupervised movement ("Level 3 Privileges") to off-grounds supervised movement ("Level 4 Privileges"). For the reasons outlined below, the judgment of the trial court will be affirmed.

{¶ 2} On June 12, 2013, the Montgomery County Grand Jury returned a two-count indictment charging Honaker with kidnapping for the purpose of engaging in sexual activity with the victim in violation of R.C. 2905.01(A)(4), a first-degree felony, and gross sexual imposition of a person less than 13 years of age in violation of R.C. 2907.05(A)(4), a third-degree felony. Honaker pled not guilty to the charges and thereafter moved for a competency evaluation.

{¶ 3} On June 25, 2013, the trial court ordered Honaker to undergo a competency evaluation at the Forensic Psychiatry Center for Western Ohio. Following the evaluation, the examiner, Dr. Scott T. Kidd, submitted a written report concluding that Honaker was not competent to stand trial and that Honaker's competency was not restorable within the time allowed by law. Given that the trial court found that Dr. Kidd's report indicated that Honaker "suffer[ed] from moderate mental retardation," the trial court thereafter ordered Honaker to undergo a "separate evaluation by a mental retardation and developmental disabilities psychologist" designated by the Ohio Department of Developmental Disabilities. Following that evaluation, the examiner, Dr. Joseph E. Kovesdi, submitted a written report that also concluded Honaker was not competent to stand trial and was

not restorable within the time allowed by law.

{¶ 4} On November 1, 2013, the trial court held a competency hearing and subsequently issued a written decision finding Honaker incompetent to stand trial and not restorable. The trial court also found that the matter met all the criteria in R.C. 2945.39(A) for the court to retain jurisdiction over Honaker. As a result, the trial court ordered that Honaker be committed to the Ohio Department of Mental Health with placement at Summit Behavioral Healthcare ("SBH").

{¶ 5} After six months of treatment at SBH, Honaker's competency was again evaluated as required by R.C. 2945.401(C) on April 28, 2014. Following the six-month evaluation, the examiner, Dr. Keith E. Ashbaugh, submitted a written report, which concluded that the least restrictive treatment alternative is still commitment at SBH. The court then held a hearing and ultimately found that Honaker "continu[ed] to be a mentally ill/mentally retarded person" subject to institutionalization by court order. Accordingly, on June 20, 2014, the trial court issued an order for Honaker's continued commitment at SBH.

{¶ 6} Five months later, on November 20, 2014, Dr. Ashbaugh submitted an evaluation report that recommended a change in Honaker's conditions of commitment to Level 3 Privileges, which would allow Honaker to have certain on-grounds unsupervised movement. Following a hearing on the request, the trial court approved and granted Honaker on-grounds unsupervised Level 3 Privileges by entry dated December 23, 2014. Thereafter, on June 12, 2015, Dr. Ashbaugh submitted yet another evaluation report recommending a change in Honaker's conditions of commitment. This time, Dr. Ashbaugh recommended that Honaker be granted Level 4 Privileges, which would allow

Honaker certain off-grounds supervised movement.   Specifically, Dr. Ashbaugh's evaluation report stated:

> The reason for this examination is to request level 4 privileges for Mr. Honaker.   These privileges will allow Mr. Honaker passes into the community with Summit staff members, outpatient mental health staff members, and/or Montgomery County Developmental Disability staff members.   These passes will be for several hours during the day and only with staff member supervision.   [Honaker] may attend Dual Recovery Anonymous meetings or other AA meetings.   He will also be allowed to visit restaurants or shop for personal items, but only under direct staff supervision.   He may also visit family members in Dayton, but only with staff present.

{¶ 7} A hearing on the Level 4 Privileges request was held on October 1, 2015. Dr. Ashbaugh appeared at the hearing and testified regarding his recent evaluation of Honaker.   Honaker, who was represented by counsel, also appeared at the hearing via video conferencing from SBH.   At the hearing, the parties stipulated to Dr. Ashbaugh's June 12, 2015 report; however, the report was supplemented by Dr. Ashbaugh's testimony at the hearing.   The parties further stipulated and agreed that the trial court could consider all prior records in the matter when rendering its decision.

{¶ 8} On October 6, 2015, after considering Dr. Ashbaugh's testimony and the evaluation reports of record, the trial court issued a written decision disapproving Level 4 Privileges.   Two days later, on October 8, 2015, the trial court issued an amended decision that was substantively the same as the original, but corrected a procedural issue

by adding a final appealable order notice.

{¶ 9} Honaker now appeals from the trial court's decision disapproving Level 4 Privileges and raises the following single assignment of error for review:

THE TRIAL COURT ERRED BY DENYING THE RECOMMENDED CHANGE IN CONDITIONS OF COMMITMENT.

{¶ 10} Under his sole assignment of error, Honaker contends the trial court erred in disapproving a recommended change in the conditions of his commitment to Level 4 Privileges. Specifically, Honaker claims that in rendering its decision, the trial court should have focused more on his present condition and the improvements he has made while under Level 3 Privileges as opposed to his history of mental health and behavioral issues. Honaker also claims that the evidence establishes his level of dangerousness is very low and that granting him Level 4 Privileges does not pose a threat to public safety.

{¶ 11} R.C. 2945.401(D)(1) establishes that the managing officer of the institution or director of the facility or program to which the defendant is committed may, at any time after evaluating the risks to public safety and the welfare of the defendant, recommend a change in the conditions of the defendant's commitment. If off-grounds supervised movement is recommended, the managing officer or director must file an application for approval of the movement with the trial court and send a copy of the application to the prosecutor. R.C. 2945.401(D)(1)(a). If the prosecutor does not request a hearing on the application, the trial court may either approve the application or schedule a hearing. *Id.*

{¶ 12} At a hearing held pursuant to R.C. 2945.401(D)(1), the prosecutor has the burden of proof "to show by clear and convincing evidence that the proposed change

represents a threat to public safety or a threat to the safety of any person." R.C. 2945.401(G)(2). " 'Clear and convincing evidence is that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State v. Marcum*, Ohio Sup. Ct. Slip Opinion No. 2016-Ohio-1002, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 13} At the conclusion of a hearing conducted under R.C. 2945.401(D)(1), "the trial court has discretion to approve, disapprove, or modify any recommendation made concerning a patient's course of treatment." *State v. Hilton*, 10th Dist. Franklin No. 02AP-518, 2003-Ohio-87, ¶ 18; R.C. 2945.401(I). Absent an abuse of that discretion, a reviewing court will not disturb the lower court's decision regarding a level movement recommendation. *Id.* " 'Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable." (Citation omitted.) *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). "It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary." *Id.* "A decision is unreasonable if there is no sound reasoning process that would support that decision." *Id.*

{¶ 14} Both parties point out that the trial court incorrectly cited to R.C. 2945.401(D)(2) in its written decision disapproving Level 4 Privileges. Section (D)(2)(a) of the statute provides that: "Division (D)(1) of this section does not apply to on-grounds

unsupervised movement of a defendant or person who has been committed under section 2945.39 or 2945.40 of the Revised Code, who is a mentally retarded person subject to institutionalization by court order, and who is being provided residential habilitation, care and treatment in a facility operated by the department of development disabilities." Section (D)(2)(b) of the statute permits the department of developmental disabilities to remove a patient from a facility in which the patient is committed and to place the patient in another facility under circumstances where the department of health cites the patient's care at the facility as inappropriate under the certification requirements of the medicaid program, and the patient's care is found to jeopardize the facility's continued receipt of federal medicaid moneys.

{¶ 15} Section (D)(2) clearly does not apply to the circumstances of the present case. Regardless of the trial court's error in citing to section (D)(2) in its written decision, it is clear from the record that the trial court held a hearing under section (D)(1) and that the trial court used the correct standard of review, i.e., whether there is clear and convincing evidence that the proposed change to Level 4 Privileges represents a threat to public safety or a threat to the safety of any person.

{¶ 16} In disapproving Honaker's request for Level 4 Privileges, which would have provided him with off-grounds supervised movement such as going to AA and Dual Recovery meetings, restaurants, and stores, the trial court considered Honaker's long history of mental health and behavioral issues, which dates back to when he was just 13 years old. While Honaker argues that the trial court focused too much on his personal history, Honaker concedes that his past and the nature of his current charges are indeed relevant to the risk he presents to the public. For instance, as it relates to the charges in

the present case, it was alleged that Honaker kidnapped and molested a child under the age of 13 while Honaker was living at a mental health housing center located in Dayton. At the time of the alleged offenses, Honaker was not taking his medication and was engaging in substance abuse.

{¶ 17} In its decision disapproving Level 4 Privileges, the trial court also noted that Honaker had been charged with raping a five-year-old female in 1985, which resulted in him receiving treatment at Twin Valley Behavioral Healthcare until 2001. The record further indicates that Honaker had been psychiatrically hospitalized several times since his discharge from Twin Valley and had been declared incompetent to stand trial and not restorable on at least four occasions. Accordingly, in rendering its decision, the trial court considered that Honaker has a history of relapse and repeated offending, despite consistent mental health treatment and supervision.

{¶ 18} While Dr. Ashbaugh testified that Honaker has experienced dramatic improvement with his aggressive and assaultive behavior after a change in medication, and further claimed that Honaker's behavior is "manageable," the trial court noted that Dr. Ashbaugh also testified that regardless of the improvements in his mental health, Honaker's cognitive challenges will never improve. Honaker was assessed as having substantial functional limitations in the areas of receptive and expressive language, self-care, self-direction, capacity for independent living, learning and economic self-sufficiency. Dr. Ashbaugh testified that as of 2013, Honaker's IQ score is 50, which is within the moderate intellectual disability range. Testing performed by Dr. Kidd in 2013, further indicated that Honaker's mental age is estimated at 5 years and 10 months. Moreover, Dr. Kovesdi reported that Honaker does not read or write, is unable to perform

simple math, and requires assistance with all financial matters.

{¶ 19} Due to his low cognitive abilities, the trial court found the record was devoid of any evidence that Honaker would benefit from Level 4 Privileges. In reaching this conclusion, the trial court considered Dr. Ashbaugh's testimony regarding Honaker's short attention span and his inability to attend to the topic at hand. Specifically, Dr. Ashbaugh testified that during on-grounds group meetings, Honaker tends to sit down for a few minutes, but eventually gets up and walks away. Dr. Ashbaugh admitted that Honaker may do the same thing if he were to attend off-grounds AA or Dual Recovery meetings.

{¶ 20} The court also considered Dr. Ashbaugh's testimony that it would be inappropriate for Honaker to be unsupervised at any time as he remains a risk to the public. While Dr. Ashbaugh believes that there would be no issue with having Honaker pass in the community under supervision, he agreed that it is possible for a patient to simply walk away from the supervisor if the person providing the supervision is physically incapable of stopping the patient. Indeed, Dr. Ashbaugh testified that during his tenure at SBH, there actually was an incident where a patient left their supervisor and was picked up by local police.

{¶ 21} Finally, the court considered Dr. Ashbaugh's testimony that Honaker's risk of relapse is high if he were released into the community unsupervised. In fact, as part of his June 12, 2015 evaluation, Dr. Ashbaugh explicitly stated that Honaker's "risk factors of relapse are primarily historical, but his risk for ultimate relapse is estimated to be high." Although Dr. Ashbaugh believes staff supervision will mitigate the risk for relapse, he nevertheless agreed that Honaker's impulsivity remains a safety concern.

{¶ 22} Based on the foregoing considerations, we do not find that the trial court's

decision disapproving Level 4 Privileges was unreasonable, arbitrary, or unconscionable so as to be considered an abuse of discretion. There exists clear and convincing evidence that the proposed change in commitment conditions represents a threat to public safety or a threat to the safety of any person. This is exhibited by the nature of Honaker's past offenses, his history of repeat offending despite substantial medical intervention, his severe cognitive limitations, his impulsivity, his high risk of relapse, and the potential for him to simply walk away from the person supervising him while he is off grounds. There is also nothing in the record indicating that Level 4 Privileges would benefit him or that the privileges represent the least restrictive treatment environment. Accordingly, we do not find that the trial court abused its discretion in disapproving Level 4 Privileges.

{¶ 23} Honaker's sole assignment of error is overruled and the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.


Copies mailed to:

Mathias H. Heck, Jr.
Michele D. Phipps
Victor A. Hodge
Hon. Mary Katherine Huffman