[Cite as *State v. Stutler*, 2022-Ohio-3838.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Craig R. Baldwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Earle E. Wise, Jr., J. |
| -vs- | : | |
| | : | |
| JEREMY STUTLER | : | Case No. 2020 CA 00022 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 2011CR1169




JUDGMENT:                    Reversed




DATE OF JUDGMENT:            October 27, 2022




APPEARANCES:

For Plaintiff-Appellee                   For Defendant-Appellant

KATHLEEN O. TATARSKY                     MICHAEL A. PARTLOW
110 Central Plaza South                  112 South Water Street
Suite 510                                Suite C
Canton, OH  44702-1413                   Kent, OH  44240

*Wise, Earle, J.*

{¶ 1}   This matter is before this court on remand from the Supreme Court of Ohio which reversed our decision in *State v. Stutler*, 5th Dist. Stark No. 2020 CA 00022, 2021-Ohio-481 (hereinafter "*Stutler III*").   The Supreme Court has directed us "to consider whether the state met its burden of proof under R.C. 2945.401(G) and therefore whether the trial court's decision denying the recommended change in Stutler's commitment conditions should be affirmed or reversed."

## FACTS AND PROCEDURAL HISTORY

{¶ 2}   In 2011, Defendant-Appellant, Jeremy Stutler, was charged with murder, tampering with evidence, and gross abuse of a corpse, and found not guilty by reason of insanity.  He was committed to Twin Valley Behavioral Healthcare, a maximum security mental health facility.   In January 2014, appellant was transferred to Northcoast Behavioral Healthcare.   He was granted Level III movement to participate in Level III activities and the less restrictive Level IV movement for medical treatment.

{¶ 3}   On February 2, 2015, Joy Stankowski, M.D., the Chief Clinical Officer of Northcoast Behavioral Healthcare, requested that appellant be granted Level IV movement for community trips with staff or case manager supervision.  A second opinion found the request reasonable albeit with numerous conditions.  Following a hearing, the trial court denied the request.   This court affirmed the decision, holding "a trial court retains discretion to deny a request for increased privileges even if the evidence in opposition to the requested modification presented by the state does not rise to the level of clear and convincing evidence."  *State v. Stutler*, 5th Dist. Stark No. 2015CA00099, 2015-Ohio-5518, ¶ 13, *appeal not accepted,* 145 Ohio St.3d 1470, 2016-Ohio-3028 (*Stutler I*).

{¶ 4} On January 27, 2017, Dr. Stankowski again requested that appellant be moved to Level IV for community privileges. The request was accompanied by a recommendation from a medical doctor. Again, a second opinion found the request reasonable contingent upon several conditions. Following a hearing, the trial court denied the request. This court affirmed the decision, holding "[w]e see no reason to alter our finding in this case and continue to hold that the trial court retains its discretion even if the prosecutor opposes the change and does not provide clear and convincing evidence of a threat to public safety or a person." *State v. Stutler*, 5th Dist. Stark No. 2017CA00094, 2018-Ohio-1619, ¶ 13, *appeal not accepted,* 153 Ohio St.3d 1467, 2018-Ohio-3450 (*Stutler II*).

{¶ 5} On September 26, 2019, Dr. Stankowski again requested that appellant be granted movement to Level IV with GPS electronic monitoring for community privileges. A hearing was held on December 12, 2019. By judgment entry filed December 26, 2019, the trial court denied the request. This court affirmed the decision, following the standard of review set forth in *Stutler I and II*. *State v. Stutler*, 5th Dist. Stark No. 2020 CA 00022, 2021-Ohio-481 (*Stutler III*).

{¶ 6} Appellant appealed to the Supreme Court of Ohio. In *State v. Stutler,* 2022-Ohio-2792, ___ N.E.3d ___, ¶ 9, the Supreme Court found our analysis used the incorrect standard of review and held "a trial court lacks discretion to deny a request for a level change when the state has failed to present clear and convincing evidence that the change represents a threat to public safety or any person." The Supreme Court reversed our judgment and remanded the matter for us "to consider whether the state met its burden of proof under R.C. 2945.401(G) and therefore whether the trial court's decision

denying the recommended change in Stutler's commitment conditions should be affirmed or reversed." *Id.* at ¶ 16.

{¶ 7}   We will now review appellant's first assignment of error using the corrected standard of review, as appellant's second assignment of error was resolved by the Supreme Court's opinion:

I

{¶ 1}   "THE TRIAL COURT'S DETERMINATION THAT APPELLANT SHOULD BE DENIED A CHANGE TO LEVEL IV-COMMUNITY PRIVILEGES IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND CONSTITUTES AN ABUSE OF THE TRIAL COURT'S DISCRETION."

II

{¶ 2}   "THE TRIAL COURT HAD NO DISCRETION TO DENY THE LEVEL CHANGE REQUESTED IN THE ABSENCE OF CLEAR AND CONVINCING EVIDENCE INDICATING THAT THE LEVEL CHANGE SHOULD NOT BE GRANTED."

I

{¶ 3}   In his first assignment of error, appellant claims the trial court's decision to deny the level change is not supported by clear and convincing evidence and therefore constitutes an abuse of discretion.  We agree.

{¶ 4}   R.C. 2945.401 states the following in pertinent part:

(A) A defendant found incompetent to stand trial and committed pursuant to section 2945.39 of the Revised Code or a person found not guilty by reason of insanity and committed pursuant to section 2945.40 of the Revised Code shall remain subject to the jurisdiction of the trial court

pursuant to that commitment, and to the provisions of this section, until the final termination of the commitment as described in division (J)(1) of this section.

(D)(1) Except as otherwise provided in division (D)(2) of this section, when a defendant or person has been committed under section 2945.39 or 2945.40 of the Revised Code, at any time after evaluating the risks to public safety and the welfare of the defendant or person, the designee of the department of mental health and addiction services or the managing officer of the institution or director of the facility or program to which the defendant or person is committed may recommend a termination of the defendant's or person's commitment or a change in the conditions of the defendant's or person's commitment.

(G) In a hearing held pursuant to division (C) or (D)(1) of this section, the prosecutor has the burden of proof as follows:

(2) For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person.

(H) In a hearing held pursuant to division (C) or (D)(1) or (2) of this section, the prosecutor shall represent the state or the public interest.

(I) At the conclusion of a hearing conducted under division (D)(1) of this section regarding a recommendation from the designee of the department of mental health and addiction services, managing officer of the institution, or director of a facility or program, the trial court may approve,

disapprove, or modify the recommendation and shall enter an order accordingly.

{¶ 5}   Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established."  *Cross v. Ledford,* 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 6}   Three individuals testified during the hearing: psychologist Michael R. Kerschner, Ph.D., psychiatrist Jagdish Mude, M.D., and appellant.

{¶ 7}   Dr. Kerschner sees appellant two times a week for group therapy and one time per week for individual therapy which began about eight months prior to the hearing. T. at 14, 42-43.  He is not on appellant's treatment team, but serves as a psychologist on the treatment team "when important issues come up."  T. at 23.  He does not participate in treatment team meetings.  T. at 43-44.  He has never known appellant to participate in violence, even when confronted with violent conduct by others. T. at 18.  In fact, appellant secured a situation to keep staff safe after a patient struck a staff member.  T. at 19.  Dr. Kerschner explained how he reviewed appellant's file and the trial court's prior decisions, and crafted a very specific plan for the level change, taking into account the trial court's concerns.  T. at 15-17.  The plan was to fit appellant with a GPS device during outings, and he would be accompanied by Dr. Kerschner and another mental health professional, as well as another individual for security purposes.  T. at 26, 28, 31.  Dr. Kerschner opined, within a reasonable degree of medical certainty, the plan would be safe for both appellant and the general public as appellant's "risk assessment" was low.  T. at 34-36. He stated appellant was in "remission" for his bipolar disorder, understood his mental

condition with "great clarity and insight," and has expressed "profound" remorse. T. at 17, 20-21. Dr. Kerschner would characterize appellant as one of the more stable patients at Northcoast. T. at 37. Appellant is compliant with his medications and has never attempted to abuse alcohol or drugs while at Northcoast. T. at 24-25, 36-37, 41-42, 44. On cross-examination, Dr. Kerschner admitted appellant suffers from bipolar disorder with psychotic features which could reemerge. T. at 40-41. Between staying at the facility versus being out in the community with supervision, staying at the facility would be "the more-structured situation." T. at 41.

{¶ 8} Dr. Mude started caring for appellant in July 2018. T. at 48. He sees appellant about once a month for 25-30 minutes. T. at 55. Appellant's diagnosis is bipolar disorder with psychotic features. T. at 60. Dr. Mude stated appellant's medications are "working excellent on him." T. at 48. Dr. Mude was part of the group that developed the Level IV community plan and was in support of the plan. T. at 49. He opined appellant "has been stable, taking his medication, and since the time I've had [him as a] patient in the hospital, he never exhibited any aggressive behavior." T. at 50. He explained that one time on a medical trip for a dental issue, appellant had the opportunity to run away, but chose not to. *Id.* "The staff was not there for almost 45 minutes and he was alone there. So if he wanted to, he could have run away but he never took that chance." T. at 50-51. Dr. Mude stated appellant would "comply with whatever restriction we put on him" and "agreed to put on the ankle bracelet." T. at 51. Appellee did not cross-exam Dr. Mude, but the trial court asked him questions. When asked if appellant's diagnosis of bipolar disorder with psychotic features was still the same, Dr. Mude stated it was the same, "but the symptoms are not there." T. at 60. Since July of 2018, appellant has not exhibited any hostility and "has the capacity to keep anger in control, and he is working

almost for five years without any problem." T. at 62, 63. He admitted that future violence could take place if appellant stopped taking his medication. T. at 63-64.

{¶ 9} Appellant testified he heard the specifics of the Level IV Community plan and he agreed with the specifics and would not have any problem complying with everything asked of him. T. at 67-68. He stated since 2014, he went on at least twelve Level IV outings for medical care. T. at 69. In August 2019, he went to a dental appointment for oral surgery. *Id.* He was accompanied by two staff members. Following the surgery, he was returned to the lobby and the staff members were not present. T. at 70. An employee with the surgeon's office remained alone with him until a staff member returned. T. at 70-71. He was not wearing any physical restraints and did not attempt to escape. T. at 71. He understands his bipolar disorder is a lifetime disorder that has to be managed and "deviating from that plan could cause a reoccurrence of, of my condition." T. at 74-75. He helps out with several groups at Northcoast including alcoholics anonymous, therapeutic community meetings, the GED program, and library groups. T. at 76. If he could move to Level IV, he could participate in a walking therapy group and a gardening group, both on the grounds, and participate on the patient advisory counsel. T. at 77-78. Although he experienced personal acts of violence while at Moritz and Northcoast, he did not engage and/or commit any acts of violence in either institution. T. at 78-79. He was involved in three incidents of violence upon him by others, to which he left the scene and alerted staff. T. at 79-81. On one occasion, he helped secure an area where a staff member had been struck by another patient. T. at 80. He testified to feeling remorse about his crime. T. at 82. Appellee did not cross-exam appellant.

{¶ 10} We note the record is devoid of any expert reports.

{¶ 11} In its December 26, 2019 judgment entry denying appellant's movement to Level IV for community privileges, the trial court outlined appellant's treatment from the beginning (2012). In 2014, the same trial court approved appellant's transfer from maximum security (Twin Valley) to Northcoast Behavioral Healthcare. In June 2014, the trial court approved Level III movement to participate in Level III activities and the less restrictive Level IV movement for medical treatment. The trial court also discussed the 2015 and 2017 hearings and decisions.

{¶ 12} The trial court stated one of the major issues of concern was public safety, and noted he was disturbed about the handling of the Level IV medical outing for the oral surgery: "[e]ven more worrisome is the previous gross negligence of the Northcoast staff on a medical privilege visit." The trial court questioned Dr. Kerschner's working relationship with appellant as the psychologist was not a member of appellant's treatment team and Dr. Kerschner acknowledged the team would know the patient the best. The trial court was troubled with the fact that Dr. Mude never reviewed any reports from 2015 or 2017 regarding appellant's history. The trial court stated the following:

As the Court has previously pronounced, one of its main roles is to protect the public. This Court works within a very small margin of error; if the trial court allows these trips and Defendant were to cause serious injury to another, the Court, not the psychiatrist, would bear the legal, moral and ethical responsibility. The crimes in this particular case were violent, lethal and gruesome. These were not crimes that were committed because of a lapse of judgment, but claimed to be committed due to "delusional visions by demons."

{¶ 13} The trial court stated while it respected the opinion of the two professionals, it simply disagreed with their ultimate determination. The trial court concluded the professionals did not establish a clear understanding of appellant's complete treatment plan.

{¶ 14} As cited above, R.C. 2945.401(G)(2) requires the prosecutor to show by clear and convincing evidence that the proposed change to a less restrictive status represents a threat to public safety or a threat to the safety of any person.

{¶ 15} Given the security breach of the Level IV medical plan, we find it is reasonable for the trial court to be concerned about public safety. However, appellant did not act out when presented with the opportunity at the dental appointment and instead alerted the medical office staff. On three occasions, he was personally confronted with a violent act, but did not engage, instead choosing to alert staff. While appellant is diagnosed with bipolar disorder with psychotic features, he is not exhibiting any symptoms. Since 2018, he has not exhibited any hostility and has been able to keep any anger in check. Appellant testified he understood his bipolar disorder is a lifetime disorder that has to be managed without deviation from the plan. He is actively engaged in his care and is helping others by his involvement in several groups at Northcoast.

{¶ 16} While we understand the trial court's concern, no one has a crystal ball into the future. We can only look at the evidence presented by the prosecutor during the December 12, 2019 hearing and in this case, we do not find the prosecutor met its burden of clear and convincing evidence that the change represents a threat to public safety or any person [R.C. 2945.401(G)(2)].

{¶ 17} Upon review, we find the trial court's decision to deny the level change is not supported by clear and convincing evidence.

{¶ 18} Assignment of Error I is granted.

{¶ 19} The judgment of the Court of Common Pleas of Stark County, Ohio is hereby reversed.

By Wise, Earle, J.

Baldwin, P.J. and

Wise, John, J. concur.

EEW/db