[Cite as *State v. Riddle*, 2023-Ohio-3943.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2023-A-0006 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| RESHAD J. RIDDLE, | |
| Defendant-Appellant. | Trial Court No. 2013 CR 00208 |

**O P I N I O N**

Decided: October 30, 2023
Judgment: Reversed and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Margaret Brunarski*, Ashtabula County Public Defender, and *Michael J. Ledenko*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} In Ohio, a person found not guilty by reason of insanity is subject to commitment under express conditions, and the director of the facility or program to which the defendant or person is committed may apply to the sentencing court for a change in those conditions under R.C. 2945.401, which determines the level of freedom or restraint placed on the individual while committed.

{¶2} Appellant, Reshad Riddle, appeals the order of Ashtabula County Court of Common Pleas denying Northcoast Behavioral Healthcare Center's (NBH) request for change in movement to Level 4 community movement.

{¶3} Appellant has raised one assignment of error, arguing the trial court abused its discretion by denying the request to permit Level 4 community movement because the State did not present clear and convincing evidence that the change posed a danger to the community, any person, or appellant.

{¶4} Having reviewed the record and the applicable caselaw, we reverse the judgment of the trial court. After holding a continued commitment hearing, the trial court denied the request for change in movement, finding the State of Ohio had met its burden to show by clear and convincing evidence that such a change presented a danger and risk to public safety. However, our review of the hearing indicates the prosecution did not present clear and convincing evidence to support this conclusion. Dr. Daksha Trivedi testified in favor of a change in movement to allow Level 4 community movement and the prosecution adduced no evidence to suggest appellant presented a threat to public safety or any person.

{¶5} Therefore, we reverse the judgment of the Ashtabula County Court of Common Pleas and remand this matter for further proceedings consistent with this opinion.

### Substantive and Procedural History

{¶6} On April 18, 2013, appellant was indicted on the following counts: Count 1: Aggravated Murder, in violation of R.C. 2903.02; Count 2: Murder, in violation of R.C. 2903.01; and Count 3 Having Weapons Under Disability, in violation of R.C. 2923.13.

2

Appellant was initially found not competent to stand trial and the court ordered that he be treated at NBH to restore his competency. On July 28, 2014, the trial court found appellant competent to stand trial.

{¶7} On December 19, 2014, appellant proceeded to a bench trial. The trial court found appellant not guilty by reason of insanity on Counts 1 and 2 and the counts later merged for sentencing purposes.

{¶8} On December 31, 2014, the trial court found appellant to be a mentally ill person subject to hospitalization.

{¶9} Appellant entered NBH on January 15, 2015.

{¶10} At several continued commitment hearings between 2015 and 2022, the trial court determined appellant remained mentally ill and required continued commitment at NBH. Appellant currently has Level 3 on grounds unsupervised movement which permits unsupervised movement on NBH grounds. He also has been granted Level 4 off-ground supervised movement to receive necessary medical care off NBH grounds.

{¶11} On January 3, 2022, the trial court denied a request to change appellant's community movement level from Level 3 to Level 4, which would have allowed appellant to engage in supervised off-ground trips in the community with other NBH patients and an NBH staff member. The trial court said it denied that request because it

> was not in receipt of adequate information as it relates to the protocol and procedures to be taken by the hospital * * * i.e. safety and security precautions; patient to staff ratio; length of time; number of trips; and effect of Covid on community trips. Such information would be helpful to the Court in its independent review of his request and effect on public safety. The report and testimony focused on interests of the Acquittee and his progress, but not on public safety, if the Acquittee were granted level movement.

3

The trial court also noted that appellant had been taking an injectable medication voluntarily for five years and had had no incidents with medication for several years.

{¶12} On November 28, 2022, Dr. Joy Stankowski sent a letter to the trial court to request that appellant be granted Level 4 off-ground community movement supervised by NBH staff.

{¶13} On January 10, 2023, pursuant to the request for increasing appellant's movement level, the trial court held a continued commitment hearing. Dr. Daksha Trivedi was the sole witness to testify at the hearing.

{¶14} Dr. Trivedi testified that he has been a psychiatrist for 25 years and works at NBH. Dr. Trivedi has served as appellant's attending psychiatrist since appellant's admission to NBH. He said that part of the goal at NBH is to rehabilitate patients with psychiatric issues to "improve their functioning socially and occupationally." An aspect of such treatment involves following hospital rules and interacting well with other patients and staff members.

{¶15} Dr. Trivedi said that appellant's current Level 3 community movement level allows him to "work in the patients' work program at the hospital and participate in on-ground therapeutic and recreational activities[.]" He said appellant has been in the work program for six years and has received positive feedback. Dr. Trivedi said appellant has been helpful, follows all required rules, is able to finish his work, and interacts well with others.

{¶16} Dr. Trivedi said Level 4 community movement involves four primary activities. The first activity is Walking Group, which was instituted due to COVID-19. The activity involves walking three or four patients around the perimeter of the hospital with

4

one or two hospital staff members. This activity typically lasts for one half-hour. The area around the hospital is not close to pedestrians, residences, or shopping centers.

{¶17} The second activity is shopping, which involves three patients going on a shopping trip to a store like Wal-Mart under the supervision of one hospital staff member. The trips last about four hours and may involve trips to multiple stores per trip. Typically, there are three to four shopping trips per year. While on a shopping activity, patients are to remain within eyesight of the hospital staff member at all times and cannot split up to go into different aisles.

{¶18} The third activity is a restaurant trip. These trips involve the same rules as the shopping activity and often follow the shopping activity on the same outing. A fourth activity is a general activity in a public setting such as a park visit.

{¶19} He said if there are incidents on community activities, the staff member would immediately bring all the patients back to the hospital. He said a staff member will not physically restrain a patient and that if the situation is "very serious and critical, they will call 911 * * *."

{¶20} Dr. Trivedi said there have been incidents with some patients but did not have "any concern about those kinds of issues with Mr. Riddle if he goes on those trips." He based this opinion "on the fact that Mr. Riddle has level four to go off ground with [a] staff member to go for medical passes. He has been to Metro Hospital several times -- about, oh, 20 times – to see the consultant at Metro Hospital * * *." He said appellant has had to deal with frustrations and difficult interactions in NBH and on his Level 4 medical trips.

5

{¶21} He further said appellant has "gradually been able to comply with the structure and the supervision at the hospital." He said appellant has been helpful with other patients and recalled a recent incident where a patient tried to fight appellant but appellant "followed the direction of the staff and walked away." He explained that if the court grants a movement change, the hospital still exercises discretion about whether activities are appropriate and that activities will be put on hold if the patient has a problem.

{¶22} Dr. Trivedi said, in general, potential threats to the community caused by a Level 4 community activity could be "arguments, verbally aggressive behavior, and rarely physically aggressive behavior." He said the staff members taking the patients on trips are not security staff. If a patient were to wander off during a community activity, the staff member would call the police or call hospital security to the scene.

{¶23} Dr. Trivedi said appellant began taking his medication in tablet form and was unable to predict whether he would have a relapse of symptoms if he were not able to receive his daily medications.

{¶24} Appellant did not testify at the hearing but did make a statement. He said he was trying to learn from his mistakes and felt bad about what he had done. He said he thinks about it every day but offered that "[i]t was personal. It had nothing, you know, to do about public or anything like that." He said he understood there were consequences for his actions, he was remorseful, and that he has made changes over the past ten years including introspection and softening his demeanor.

{¶25} On January 18, 2023, the trial court issued a judgment entry denying the Level 4 community movement request. The entry stated:

> Although the Court understands that the Acquittee has made progress, and is currently allowed Level 4 medical passes to Metro

6

Hospital, the Court notes many concerns in regard to his leaving the hospital for trips into the community and interactions with the general public. The Court remains aware that Mr. Riddle has a history of violence and psychotic symptoms. Mr. Riddle no longer receives a weekly or monthly injection of medication for psychotic symptoms. Instead he takes a daily dose of medication at the hospital. The Court has concerns that if Mr. Riddle were to walk away during a community outing and miss his medications he would pose a danger to the community. The doctor could not confirm when or how any negative effects of not taking his medication would occur.

{¶26} The trial court further noted that appellant "has only had interactions with other patients or hospital staff since 2015. He has not interacted with the general public other than family members during this time period." The court expressed a concern that there would only be one or two staff members on community trips so if "a problem arose during an outing or if the Acquittee were to walk away, the staff member would have to call 911 or hospital security." The court concluded the State had met its burden of showing by clear and convincing evidence that there is a danger and risk to public safety if the trial court granted appellant an increase in movement.

{¶27} Appellant timely appealed the trial court's judgment entry raising one assignment of error.

## Assignment of Error and Analysis

{¶28} Appellant's sole assignment of error states:

{¶29} "The trial court erred by abusing its discretion to deny Mr. Riddle Level 4 supervised community movement because the State of Ohio did not present clear and convincing evidence that the level increase posed a danger to the community, any person, or Mr. Riddle."

{¶30} R.C. 2945.401 addresses the continuing jurisdiction of the trial court for persons committed after being found not guilty by reason of insanity. Division (D)(1)

7

provides that "at any time after evaluating the risks to public safety and the welfare of the defendant * * *, the designee of the department of mental health and addiction services or the managing officer of the institution or director of the facility or program to which the defendant * * * is committed may recommend * * * a change in the conditions of the defendant's * * * commitment."

{¶31} A person found not guilty by reason of insanity and subject to hospitalization by the court is subject to restricted movement and privileges and certain changes to a person's movement status are subject to court approval.

*See* Ohio Department of Mental Health 2012 Forensic Manual, 3, https://mha.ohio.gov/static/AboutUs/MediaCenter/PublicationsandFactSheets/ohio-forensic-manual.pdf (Accessed 5-25-2023).

{¶32} A person subject to restricted movement as described above is subject to the following movement levels:

> a. Level 1: On Residential Unit, Restricted. The patient shall not be permitted out of a locked residential area except under at least one-to-one escort (also known as one-to-one supervision) to another locked area. A locked area is a unit, building, or other area from which a person cannot leave without someone unlocking a door, gate, etc.
>
> b. Level 2: Off Residential Unit, Supervised. The patient shall be permitted access to all areas of the regional psychiatric hospital (RPH) according to hospital policy except those restricted for all patients, but shall not be permitted off grounds. Supervision means a patient is in the same space (room or area) with a staff member and the patient shall be within view of the staff member at all times.
>
> c. Level 3: On Grounds, Unsupervised. The patient shall be permitted access to specified off-unit areas of the RPH (within or outside of the perimeter of the hospital building) according to hospital policy except those restricted for all patients, but shall not be permitted off grounds.

8

Case No. 2023-A-0006

d. Level 4: Off Grounds, Supervised. Supervised by RPH or community agency staff; the patient shall be permitted to leave the grounds with RPH or community agency staff supervision and shall remain under staff supervision until his/her return. Supervision means a patient is in the same space (room or area) with a staff member and the patient shall be within view of the staff member at all times.

e. Level 5: Off Grounds, Unsupervised. The patient shall be permitted to leave the grounds without supervision for a specified period of time, with an expectation of return to the RPH on a daily basis.

f. Trial visit - Unsupervised community contact with an expectation of return to the RPH at designated times.

g. Conditional release - A commitment status under which a person receives treatment in the community for a period of time not to exceed the maximum term of imprisonment that the person could have received if convicted of the most serious offense charged.

*Id.* at 76, 80.

{¶33} In a hearing on a change in movement level restrictions, "the prosecutor has the burden of proof as follows: * * * For a recommendation for a change in the conditions of the commitment to a less restrictive status, to show by clear and convincing evidence that the proposed change represents a threat to public safety or a threat to the safety of any person." R.C. 2945.401(G)(2). "At the conclusion of a [level movement] hearing conducted under division (D)(1) of this section * * *, the trial court may approve, disapprove, or modify the recommendation and shall enter an order accordingly." R.C. 2945.401(I).

{¶34} "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three

9

of the syllabus. A reviewing court will not reverse a judgment when there is competent, credible evidence that would support all the essential elements of the case. *State v. Schiebel*, 55 Ohio St.3d 71, 74, 564 N.E.2d 54 (1990). A trial court "'may approve, disapprove or modify' a recommendation made under R.C. 2945.401(D)(1) * * *." *State v. Stutler,* 169 Ohio St.3d 639, 2022-Ohio-2792, 207 N.E.3d 671, ¶ 15, quoting R.C. 2945.401(I).

{¶35} "But R.C. 2946.401(I) may not be read in a vacuum. R.C. 2945.401(I) is part of a comprehensive statutory scheme that also requires the prosecutor to represent the state or the public interest, R.C. 2945.401(H), and to carry the burden of proving by clear and convincing evidence that the recommended change would result in a threat to public safety or any person, R.C. 2945.401(G)(2). These provisions must be read in harmony." *Id.* at ¶ 12. R.C. 2945.401(I) states that the trial court "may approve, disapprove, or modify" a recommendation made under R.C. 2945.401(D)(1) "shows that the court has more discretion to disapprove or modify a recommendation for nonsecured status or termination of commitment based on its findings under R.C. 2945.401(E) than it does for other recommendations for changes that involve the person's remaining supervised." *Id.* at ¶ 15.

{¶36} "[T]he use of the word 'may' is nothing more than a reflection of the trial court's options, which are based on the type of recommended change in commitment status or conditions before the court." *Id.* at ¶ 15. "[U]nless the prosecution proves by clear and convincing evidence that the institution's recommended change in the person's commitment conditions would result in a threat to public safety or any person, the trial court does not have discretion to deny the recommended change." *Id.* Three appellate

10

cases have cited the Ohio Supreme Court's recent decision in *Stutler*. In *State v. Tanner,* 12th Dist. Butler No. CA2021-12-167, 2022-Ohio-4224, *appeal not allowed,* 169 Ohio St.3d 1459, 2023-Ohio-758, 204 N.E.3d 571, the court affirmed the denial of a request to terminate Tanner's commitment pursuant to R.C. 2945.401(E). *Tanner* addressed termination of a commitment rather than a change in movement level, and only obliquely referenced *Stutler. Id.* at ¶ 33. Nevertheless, the Twelfth District's analysis is instructive. At the hearing, Tanner engaged in angry and interruptive outbursts. The Twelfth District noted that the testimony from the three psychologists testifying in favor of terminating Tanner's commitment was undermined at the hearing. and the trial court was free to believe all, part, or none of their testimony. *Id.* at ¶ 46, 48. Therefore, the court held that the trial court did not err by denying Tanner's motion to terminate commitment. *Id.* at ¶ 50.

{¶37} The Fifth District in *State v. Stutler,* 5th Dist. Stark No. 2020 CA 00022, 2022-Ohio-3838, reversed its previous decision upon the Ohio Supreme Court's remand. The trial court had expressed concern about a security breach during a prior Level 4 medical movement, but the Fifth District noted that Stutler had not taken the opportunity to run away, had alerted medical staff, and had acted appropriately during this breach. *Id.* at ¶ 22. Similarly, on three occasions Stutler had not engaged when confronted with a violent act and instead alerted staff. *Id.* Stutler had not exhibited hostility and had kept his anger in check. *Id.* The Fifth District said that it understood the trial court's concern but observed "no one has a crystal ball into the future. We can only look at the evidence presented by the prosecutor * * * and in this case, we do not find the prosecutor met its

11

burden of clear and convincing evidence that the change represents a threat to public safety or any person." *Id.* at ¶ 23.

{¶38} Finally, in *State v. Hickman*, 11th Dist. Ashtabula No. 2022-A-0114, 2023-Ohio-1793, we addressed whether the trial court abused its discretion in denying Hickman unsecured conditional release. *Id.* at ¶ 18. Hickman had been tried on two counts of aggravated murder and found not guilty by reason of insanity. *Id.* at ¶ 2.

{¶39} As in *Tanner*, we applied R.C. 2945.401(E), which applies in the context of an application to terminate a commitment.

{¶40} R.C. 2945.401(E), provides that the trial court,

shall consider all relevant factors, including, but not limited to all of the following:

(1) Whether, in the trial court's view, the defendant or person currently represents a substantial risk of physical harm to the defendant or person or others;

(2) Psychiatric and medical testimony as to the current mental and physical condition of the defendant or person;

(3) Whether the defendant or person has insight into the defendant's or person's condition so that the defendant or person will continue treatment as prescribed or seek professional assistance as needed;

(4) The grounds upon which the state relies for the proposed commitment;

(5) Any past history that is relevant to establish the defendant's or person's degree of conformity to the laws, rules, regulations, and values of society;

(6) If there is evidence that the defendant's or person's mental illness is in a state of remission, the medically suggested cause and degree of the remission and the probability that the defendant or person will continue treatment to maintain the remissive state of the defendant's or person's illness should the defendant's or person's commitment conditions be altered.

12

**{¶41}** We affirmed the trial court's denial of Hickman unsecured conditional release and distinguished *Stutler* because Hickman was not seeking off-grounds supervised movement, but was seeking a change in commitment to "non secured status." *Id.*, citing R.C. 2945.37(A)(3). We concluded "according to the Court in *Stutler*," the trial court "enjoyed broader discretion" in denying the request for unsecured conditional release "than if the movant sought a change in commitment level, such as one involving 'off-grounds supervised movement.'" *Id.*

**{¶42}** R.C. 2945.401(E) required that the trial court consider factors such as appellant's history. Therefore, we held that "in light of appellant's history, we cannot conclude that trial court was unreasonable in concluding appellant" was a potential threat to public safety. *Id.* at ¶ 20.

**{¶43}** Here, the trial court denied the requested movement change because of appellant's history of violence and psychotic symptoms. We are mindful of appellant's violent history and that he was indicted on serious charges and found not guilty by reason of insanity in 2014. However, this hearing was not a hearing regarding nonsecured status or termination of commitment. While such a hearing requires the court to consider any past history relevant to establish the person's conformity with the laws and values of society under R.C. 2945.401(E), no such requirement applies here. Instead, R.C. 2945.401(G)(2) places the burden on the State to prove by clear and convincing evidence that "that the proposed change represents a threat to public safety or a threat to the safety of any person." Appellant's history was not a factor to be considered, because the court was to determine whether the change, based on appellant's present circumstances and condition, represents a threat to public safety or the safety of any person.

13

**{¶44}** The State did not present any evidence of appellant's current violent tendencies, current psychotic behavior, current antisocial behavior toward other patients or hospital staff, or current inability to abide by hospital rules. Further, pursuant to *Hickman*, we recognize the trial court's discretion is less expansive when ruling on a change in commitment level to off-ground supervised movement. *Id.*

**{¶45}** Where the State does not carry its burden, the trial court has no alternative but to approve the recommendation under R.C. 2945.401. Although the statute permits the trial court to "approve, modify, or deny" the recommendation, the trial court may not modify or deny the recommendation where the State does not carry its burden. *Stutler,* 169 Ohio St.3d 639, ¶ 12. Further, the trial court's discretion to disapprove or modify the recommendation was more limited here because the recommendation was for a change where the person would remain supervised. *Id.* at ¶ 15.

**{¶46}** That is not to say the State could not have met its burden here. We simply hold that the State did not do so. The State only called Dr. Trivedi, who believed appellant was ready to engage in community movement. The State did not call any independent expert witnesses to rebut Dr. Trivedi's conclusions. Dr. Trivedi gave only positive testimony about appellant's progress, noting appellant has received positive feedback in the hospital work program, is helpful, follows all rules, finishes his work, and interacts well with others. Dr. Trivedi said appellant has demonstrated self-control by not engaging with another patient seeking to fight. Further, appellant has acted appropriately on all of his approximately 20 Level 4 medical excursions.

**{¶47}** The trial court also cited appellant receiving medication via tablets rather than injection as a cause for concern warranting denial of a movement change. Dr.

14

Trivedi's testimony at the hearing indicated appellant previously received medication via injection. Appellant now receives medication in tablet form. On this issue, the trial court has effectively penalized appellant's progress. The trial court also noted that appellant had "only had interactions with other patients or hospital staff since 2015. He has not interacted with the general public other than family members during this time period." True enough. But, to use appellant's current inability to interact with the public as a basis for denying a request for more interaction with the public almost assures such a request will always be denied.

{¶48} The trial court's concerns on both of these issues reflect a possibility that appellant would wander off and be unable to take his medications for an extended period of time which might cause a relapse. However, while these concerns do reflect a possible scenario, we cannot predict the future and if assuredness of the future were the standard to be applied here, no committed person found not guilty by reason of insanity would ever advance in their treatment. Further, it is notable that there was no testimony or evidence to suggest appellant has ever wandered off or is at risk of wandering off. Like the Fifth District, we understand the trial court's concern and we cannot know what will happen in the future. However, we do not find the State met its burden to prove by clear and convincing evidence that appellant poses a threat to public safety or a person if his movement level is changed to allow Level 4 community movement.

{¶49} Accordingly, appellant's sole assignment of error has merit. Therefore, we reverse the judgment of the Ashtabula County Court of Common Pleas and remand this matter to the trial court to issue a judgment entry granting the Level 4 community movement change.

15

EUGENE A. LUCCI, J., concurs,

MATT LYNCH, J., dissents with a Dissenting Opinion.

———————————————————————————————

MATT LYNCH, J., dissents with a Dissenting Opinion.

{¶50} I dissent from the majority's analysis and its judgment reversing the trial court's decision to deny Riddle's request to change his level of community movement. Given the evidence of a serious threat posed to the public by permitting Riddle to participate in off-ground trips into the community, this court should find that there was clear and convincing evidence to support the denial of Riddle's request.

{¶51} There is no question that, when a committed person seeks a change in commitment conditions, the State must prove, by clear and convincing evidence, that a change in such conditions "would result in a threat to public safety or any person." *State v. Stutler*, 169 Ohio St.3d 639, 2022-Ohio-2792, 207 N.E.3d 671, ¶ 1; R.C. 2945.401(G)(2). This matter turns on whether there was evidence present in the record meeting the State's burden.

{¶52} Riddle was found not guilty by reason of insanity for the commission of serious offenses, Aggravated Murder and Murder. "When a person is found not guilty by reason of insanity, that person is presumed presently mentally ill and dangerous." *State v. Lowell*, 2021-Ohio-3098, 179 N.E.3d 676, ¶ 16 (8th Dist.), citing *Jones v. United States*, 463 U.S. 354, 363-366, 103 S.Ct. 3043, 77 L.Ed.2d 694 (1983). This is not to say that he cannot be granted the ability to go off grounds or that the State must not satisfy the aforementioned burden, but it provides much needed context for considering the threat that may be posed depending upon the individual facts of each defendant's situation. It

16

is without question that Riddle's commission of these crimes, coupled with mental illness, demonstrates he is capable of serious violence and danger to society as a whole. It has been held that, in evaluating whether there is clear and convincing evidence to support a change in commitment conditions, the defendant's past history of mental health and behavioral issues, as well as the nature of the present criminal charges/convictions, are relevant to determine the threat he poses to the public. *State v. Honaker*, 2d Dist. Montgomery No. 26877, 2016-Ohio-5727, ¶ 16 and 22.

{¶53} Further, testimony was presented at the hearing on the present motion that Riddle had been involved in past arguments with patients or staff members while committed to the facility. His interactions with others while committed are certainly relevant to how he would behave in a public setting. They demonstrate the potential for conflicts while outside of the facility, where he would no longer be in a controlled setting.

{¶54} Additionally, the testimony regarding the nature of the trips off-grounds provides context for the threat that may be presented. Testimony indicated that Riddle and other patients would be escorted by rehabilitation or activity staff from the hospital rather than by members of security. If a situation escalated while off-grounds, the staff member's plan to address it would be to return to the hospital or contact police or security staff. It is not unreasonable for the lower court to consider testimony regarding the circumstances surrounding the off-site trips since these would go to the ultimate determination as to whether Riddle's change in commitment conditions would result in a threat to public safety or any person. *See State v. Hubbard*, 11th Dist. Trumbull No. 2013-T-0082, 2014-Ohio-4130, ¶ 34 (noting the justifiable concern of the court in relation to whether the staff could protect citizens from the defendant while on level four movement

17

in the community). While such evidence has previously been considered as relevant to whether a court abused its discretion, as in *Hubbard*, it also weighs in support of a finding that there was clear and convincing evidence of a threat posed to the public. It must be emphasized that R.C. 2945.401(G)(2) does not require the State prove that the defendant's change in confinement conditions will cause harm to the public but instead only that the change results in a threat of harm. This threat becomes more likely where the evidence shows a defendant with a history of violence and altercations will be inadequately supervised or the staff will not be able to intervene to prevent harm to the public. Here, the threat to society is evident were Riddle to become involved in an argument or altercation with the staff, other patients, or a member of the public.

{¶55} For these reasons, I disagree with reversal and a remand of the lower court's decision on the grounds that it was not supported by clear and convincing evidence. Nonetheless, it is worth noting that there may be some question whether the trial court properly considered the requirements for changing commitment conditions under R.C. 2945.401. The trial court concluded that the State met its burden in showing "that there is a danger and risk to public safety if an increase in movement is allowed at this time." R.C. 2945.401(G)(2) requires that, for a recommendation for a change in conditions to commitment to be granted, it must be demonstrated that the change "represents a *threat* to public safety or a *threat* to the safety of any person." (Emphasis added.) R.C. 2945.401(E) mentions consideration of whether a defendant "represents a substantial risk of physical harm to * * * others" but this is only a factor to consider in relation to a "determination * * * regarding nonsecured status or termination of commitment." The Supreme Court found R.C. 2945.401(E) did not apply to a change in

Case No. 2023-A-0006

commitment level. *Stutler*, 169 Ohio St.3d 639, 2022-Ohio-2792, 207 N.E.3d 671, at ¶ 13.

{¶56} A risk is defined by R.C. 2901.01(A)(7) as "a significant possibility, as contrasted with a remote possibility, that a certain result may occur or that certain circumstances may exist." Although not defined in that section, a "threat" has been described as "an indication of impending danger or harm." *In re McCoy*, 138 Ohio App.3d 774, 778, 742 N.E.2d 247 (2d Dist.2000), citing Webster's II New College Dictionary (1995) 1149. Since both "threat" and "risk" are used in R.C. 2945.401, presumably these words were intended to have different meanings for the purposes of the applicable statute here. *See State v. Roberts*, 150 Ohio St.3d 47, 2017-Ohio-2998, 78 N.E.3d 851, ¶ 37 (the use of different language by the legislature "gives rise to a presumption that different meanings were intended") (citation omitted). While the lower court may have merely used the word "risk" as a substitute for the word "threat," a remand on this ground would serve to further clarify its intention. *See Stutler* at ¶ 16 (remanding for the court to consider the facts under the correct burden of proof). Nonetheless, even in these circumstances, such a remand would be only for the purposes of the court making a finding that its conclusion applies to a threat of harm rather than based on a determination the record lacks clear and convincing evidence of a threat posed by a change in Riddle's conditions of commitment.

{¶57} For the foregoing reasons, I respectfully dissent from the majority's conclusion that there was a lack of clear and convincing evidence to warrant denial of Riddle's motion and conclude that his request for a level four movement change should not be granted.

19

Case No. 2023-A-0006